[No. B186661. Second Dist., Div. Seven. Oct. 10, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GUILLERMO RODRIGUEZ, Defendant and Appellant.

COUNSEL

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JOHNSON, J.—The issue in this case is whether evidence seized in a lawful search incident to a lawful arrest based upon an outstanding warrant should be suppressed if the police invented the ground for the traffic stop which led to the discovery of the warrant. The trial court ruled it did not need to decide whether the police made up their claim defendant's car had a "burnt out" right brake light because any taint arising from the alleged unlawful stop was dissipated by the discovery of the arrest warrant prior to the search.

If it indeed happened, fabricating the grounds for a traffic stop and repeating this fabrication under oath at a suppression hearing "strikes at the very core of our system of law."[1] The subsequent discovery of lawful grounds to arrest and search defendant does not dissipate the taint of such a flagrant violation of defendant's constitutional rights and society's necessary trust in its law enforcement officials. Nor is this violation, if it occurred, one for which the suppression of evidence is too drastic a remedy. Quite the opposite is true. Failing to invoke the most drastic remedy available to a court would have the effect of legitimizing deceitful conduct on the part of the police and permitting them to conduct a traffic stop for any reason or no reason at all in contravention of leading United States and California Supreme Court opinions.[2] Accordingly, we will reverse the judgment and remand the cause to the trial court to rehear defendant's suppression motion and make a factual determination as to whether at the time of the traffic stop defendant's car had a burnt-out brake light as the officers claim, or if they could reasonably believe it was burnt out.

## FACTS AND PROCEEDINGS BELOW

Two Bell Gardens police detectives assigned to the gang and narcotics unit stopped a car driven by Guillermo Rodriguez because of an allegedly "burnt out" brake light.[3] There is no evidence the officers issued Rodriguez a traffic citation. Instead they ran a warrant check and found an outstanding no-bail warrant for Rodriguez's arrest. After taking Rodriguez into custody on the warrant the officers searched the car and discovered a bag containing methamphetamine. Rodriguez was subsequently charged with possession for sale, and transportation of, a controlled substance.

At the hearing on Rodriguez's motion to suppress evidence of the drugs his employer testified without contradiction that when he picked up Rodriguez's car at the police impound lot three days after the arrest both taillights and brake lights were operational.

---

[1] *People v. Beardslee* (1991) 53 Cal.3d 68, 110 [279 Cal.Rptr. 276, 806 P.2d 1311].

[2] See *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].

[3] Vehicle Code section 24603 requires every vehicle manufactured and first registered on or after January 1, 1958, must be equipped with two stoplamps which, when activated, are "plainly visible and understandable from a distance of 300 feet to the rear both during normal sunlight and at nighttime . . . ." (Veh. Code, § 24603, subd. (e).) Absent evidence to the contrary we will assume defendant's vehicle fell within this requirement. Vehicle Code section 24252, subdivision (a) states: "All lighting equipment . . . installed on a vehicle shall at all times be maintained in good working order."

The trial court declined to make a factual determination as to whether the car's taillights and brake lights were working when the police stopped Rodriguez. The court stated it found "the existence of the outstanding warrant is a sufficient basis to support the search, so the motion to suppress is denied."

After the trial court denied his motion to suppress, Rodriguez pled no contest to the charges. The trial court entered a judgment of conviction and signed a certificate of probable cause. Rodriguez filed a timely appeal.

## DISCUSSION

I. *IF THE EVIDENCE IN THIS CASE WAS OBTAINED THROUGH AN UNLAWFUL TRAFFIC STOP THE EVIDENCE MUST BE SUPPRESSED.*

■ In *Wong Sun v. United States*[4] the United States Supreme Court made it clear not all evidence discovered after an illegal arrest or detention must be suppressed. Although it ruled the evidence against one of the defendants in *Wong Sun* must be suppressed the court stated it was not holding "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "[5]

■ The concept of purging the taint "attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its costs."[6] A decision whether to suppress evidence seized after an unlawful detention followed by a lawful arrest involves a balancing of the need to deter police conduct which results in a person's illegal detention with the state's legitimate interest in enforcing outstanding arrest warrants. " 'The question is whether the evidence was obtained by the government's exploitation of the illegality or whether the illegality has become attenuated so as to dissipate the taint.' "[7] Relevant factors in this attenuation analysis "include the temporal proximity of the Fourth Amendment violation to the procurement of the

---

[4] *Wong Sun v. United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].

[5] *Wong Sun v. United States, supra,* 371 U.S. at pages 487–488, citation omitted.

[6] *Brown v. Illinois* (1975) 422 U.S. 590, 609 [45 L.Ed.2d 416, 95 S.Ct. 2254] (conc. opn. of Powell, J.).

[7] *People v. Boyer* (2006) 38 Cal.4th 412, 448 [42 Cal.Rptr.3d 677, 133 P.3d 581].

challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct."[8] These factors have been applied in virtually every federal and state case involving a search following an alleged unlawful traffic stop.[9]

Applying this test to the present case the first and second factors cancel each other out. Although there is no evidence as to how long it took the officers to run the warrant check in this case, as a general rule these checks take only a few minutes. Furthermore, nothing happened in the time between the stop and the discovery of the warrant which changed the dynamics of the situation in a way one can say "purged" the stop of its alleged illegality. Thus the relatively short time between Rodriguez's detention and the search weighs in favor of suppression.[10] On the other hand discovery of the outstanding warrant for Rodriguez's arrest was clearly a significant "intervening circumstance."[11] Thus, assuming the traffic stop was unlawful, the decision whether to suppress the resulting evidence turns on the "flagrancy of the official misconduct."

The prosecution usually prevails on the "flagrancy" factor because even if the constable blundered in determining he had a valid reason to detain the defendant there is rarely evidence "the constable crumbled hallowed protections due the accused."[12] This case is different, however. Here there is credible evidence the officers may have invented a justification for the traffic stop in order to have an excuse to run warrant checks on the driver and passenger. As Rodriguez's employer testified, when he picked up the car from the impound lot three days after Rodriguez's arrest the brake lights and taillights were in working order. It is also worth noting the Bell Gardens police who stopped Rodriguez were not patrol officers—whose duties normally include enforcing traffic laws—but detectives assigned to the gang and narcotics unit—whose duties would *not* normally include issuing citations for minor traffic offenses. Finally, there is the undisputed fact the officers did not issue Rodriguez a citation for the broken brake light. By this analysis, we do not mean to imply we believe the officers in this case cooked up a reason to stop Rodriguez in order to investigate possible drug or gang activity. This is a

---

[8] *People v. Boyer, supra,* 38 Cal.4th at page 448; and see *Brown v. Illinois, supra,* 422 U.S. at pages 603–604.

[9] See, for example, *U.S. v. Green* (7th Cir. 1997) 111 F.3d 515, 521 and cases cited; *State v. Page* (2004) 140 Idaho 841 [103 P.3d 454, 459] and cases cited.

[10] *Brown v. Illinois, supra,* 422 U.S. at page 603; *U.S. v. Green, supra,* 111 F.3d at page 521.

[11] *U.S. v. Green, supra,* 111 F.3d at page 521.

[12] *People v. Beardslee, supra,* 53 Cal.3d at page 111.

question of fact for the trial court to determine on remand. Our point is that a material question of fact *exists* as to the legality of the stop and the trial court must resolve it.[13]

■ In discussing the three factors relevant to an inquiry under *Wong Sun* the United States Supreme Court singled out as "particularly" important "the purpose and flagrancy of the official misconduct."[14] It is difficult to imagine a more flagrant example of official misconduct than perjury by a police officer. As our Supreme Court has stated: "Perjury is qualitatively different from ordinary search and seizure or *Miranda* violations. It 'involve[s] a corruption of the truth-seeking function of the trial process.' "[15] The court spelled out its reasons for holding "[p]erjury by law enforcement officials is particularly pernicious."[16] "Our entire criminal justice system," the court stated, "is built around the belief, and necessity, that law enforcement officers will testify truthfully. Courts generally believe the testimony of such persons rather than that of the accused. . . . Deliberate, cynical perjury by law enforcement officials strikes at the very core of our system of law. It manipulates and thereby perverts the entire judicial process."[17]

■ It could be argued the perjury in this case, if there was perjury, did not occur at the time the detectives stopped defendant's vehicle but at the suppression hearing months later and therefore was too attenuated to count as a factor in the suppression determination. We do not find this argument persuasive. The Fourth Amendment contemplates the officer conducting a search or seizure will be able to justify it when called upon by a magistrate to do so. If the seizure is to take place under a warrant the officer is called upon to provide a justification in an affidavit presented to a neutral magistrate. No one would dispute perjury in a search warrant affidavit regarding the facts establishing probable cause would justify suppression of the evidence seized under the warrant. *United States v. Leon* so held.[18] In the case of a warrantless seizure the suppression hearing is the equivalent of the affidavit

---

[13] The fact the officers did not issue Rodriguez a citation and may not have even had a citation book goes only to the *credibility* of their reason for stopping Rodriguez. If Rodriguez did indeed have a burnt-out brake light the officers' subjective motivation for the stop is irrelevant under *Whren v. United States* (1996) 517 U.S. 806, 813 [135 L.Ed.2d 89, 116 S.Ct. 1769]. (Vice officers stopped defendant for speeding and failing to signal a turn. (*Id.* at p. 810.))

[14] *Brown v. Illinois, supra,* 422 U.S. at pages 603–604.

[15] *People v. Beardslee, supra,* 53 Cal.3d at page 110, quoting *United States v. Agurs* (1976) 427 U.S. 97, 104 [49 L.Ed.2d 342, 96 S.Ct. 2392].

[16] *People v. Beardslee, supra,* 53 Cal.3d at page 110.

[17] *People v. Beardslee, supra,* 53 Cal.3d at page 110.

[18] *United States v. Leon* (1984) 468 U.S. 897, 926 [82 L.Ed.2d 677, 104 S.Ct. 3405].

for a warrant as it is the first opportunity for the officer to present his justification for the seizure and for a review of that justification by a neutral magistrate.

For the reasons discussed above, we conclude the evidence seized in the case before us is subject to exclusion under the test set out in *Wong Sun.*

Nevertheless, even if the officers had no lawful reason to stop defendant, the People maintain we should follow the United States Supreme Court's lead in *Hudson v. Michigan*[19] and not apply the exclusionary rule in this case. As we shall explain, *Hudson* is distinguishable from the present case for several reasons.

■ In *Hudson* the court stated: "Attenuation also occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."[20] In the case of the knock-and-announce rule, the court held, the interest in protection against "unreasonable searches and seizures," which is the basis for the rule,[21] would not be served by suppressing evidence obtained under a valid search warrant. The rule is too uncertain to provide the police clear advance notice of what is required of them in a given situation; the police have no incentive to violate the rule; and there are other ways of preventing violations of the rule which do not involve the substantial social costs of suppression of relevant and validly obtained evidence.[22]

The prime purpose of the exclusionary rule is not to punish the officers who violated the defendant's Fourth Amendment rights but to provide a means of deterring police misconduct in the future.[23] But deterrence of future violations of the knock-and-announce rule presupposes police officers can learn something from past challenges—successful and unsuccessful—to their observance of the rule.[24] The *Hudson* court concluded the educational value of trial and appellate courts' ex post facto evaluations of knock-and-announce compliance is of little value in instructing future police conduct because the

---

[19] *Hudson v. Michigan* (2006) 547 U.S. ___ [165 L.Ed.2d 56, 126 S.Ct. 2159].

[20] *Hudson v. Michigan, supra,* 547 U.S. at page ___ [126 S.Ct. at page 2164].

[21] *Wilson v. Arkansas* (1995) 514 U.S. 927, 931–936 [131 L.Ed.2d 976, 115 S.Ct. 1914].

[22] *Hudson v. Michigan, supra,* 547 U.S. at page ___ [126 S.Ct. at pages 2165–2168].

[23] *Arizona v. Evans* (1995) 514 U.S. 1, 14 [131 L.Ed.2d 34, 115 S.Ct. 1185]; *Illinois v. Krull* (1987) 480 U.S. 340, 347 [94 L.Ed.2d 364, 107 S.Ct. 1160].

[24] See *United States v. Leon, supra,* 468 U.S. at page 918. ("If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect . . . it must alter the behavior of individual law enforcement officers or the policies of their departments.")

court's " 'reasonable wait time' standard" is "not easily applied," and "necessarily uncertain."[25] "How many seconds' wait are too few?" the court asked rhetorically. Came the response, the answer "is necessarily vague."[26] In other words, officers wanting to know how long they need to wait before forcing entry can as well consult "the Magic Eight Ball" as past court decisions.

Of particular relevance to our case, the court contrasted the hazy requirements of the knock-and-announce rule with "the warrant or *Miranda* requirements, compliance with which is readily determined (either there was or was not a warrant; either the *Miranda* warning was given, or it was not)."[27] Similarly, in our case, either the defendant's brake light was working or it was not.[28]

As the *Hudson* court further concluded, suppressing evidence in an effort to deter violations of the knock-and-announce rule is not worth the cost to society of possibly letting a guilty person go free because the police have no incentive to violate the rule in the first place.[29] The only possible benefit to the officers from not complying with the knock-and-announce rule, the court explained, is preventing the possible destruction of evidence or avoiding life-threatening resistance by the occupants of the premises. But if the officers have even a " 'reasonable suspicion' " either or both of these dangers exist they are not required to follow the knock-and-announce procedure anyway.[30] On the other hand, in addition to the usual social costs of excluding relevant incriminating evidence, the court foresaw applying the exclusionary rule to knock-and-announce violations "would generate a constant flood of alleged failures to observe the rule" which would be "difficult for the trial court to determine and even more difficult for an appellate court to review."[31] Another adverse consequence of employing the exclusionary rule would be to further confound the police in their attempt to comply with the knock-and-notice requirement which, as we noted above, the court admitted was already "uncertain" and "not easily applied."[32] To avoid the risk of the evidence seized being excluded at trial police officers "would be inclined to wait longer than the law requires" before forcing entry thereby running the risk of the

---

[25] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at pages 2162, 2163, 2166].

[26] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2163].

[27] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2166].

[28] See discussion at pages 1148–1149, below.

[29] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2166].

[30] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2166]; see *Wilson v. Arkansas, supra,* 514 U.S. at page 936.

[31] *Hudson v. Michigan, supra*, 547 U.S. at page ___ [126 S.Ct. at page 2166].

[32] *Hudson v. Michigan, supra*, 547 U.S. at pages ___ [126 S.Ct. at pages 2166, 2162].

evidence being destroyed before it could be seized or the occupants preparing to meet the officers with violence.[33]

On the other hand, the United States Supreme Court and our high court have recognized suppression of evidence is a reasonable response to an unlawful detention short of arrest,[34] including traffic stops.[35] In *Terry v. Ohio*, which set the Fourth Amendment standards for investigatory detentions, the court made it clear the violation of those standards would be subject to the exclusionary rule. "For the issue is not the abstract propriety of the police conduct [in conducting a stop-and-frisk], but the admissibility against petitioner of the evidence uncovered by the search and seizure."[36] The court went on to state "experience has taught that it is the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantee against unreasonable searches and seizures would be a mere 'form of words.' "[37] Clearly, the police have the same incentive to lie or "bend the truth" in justifying a traffic stop as they do in justifying a warrant—the overriding desire to " ' "ferret[] out crime." ' "[38] And, as in the case of an invalid warrant, "suppression is appropriate . . . if the officers were dishonest or reckless" in justifying their grounds for the stop or "could not have harbored an objectively reasonable" suspicion the defendant had committed a crime.[39]

Finally, the *Hudson* court found there are other means of deterring violations of the knock-and-announce rule assuming such deterrence is necessary. Among these alternatives are civil rights actions against the offending officers and their municipalities, reforms in the education, training and supervision of officers and "various forms of citizen review."[40]

We view *Hudson*'s discussion of alternatives to the exclusionary rule as dictum. It is by no means the first time the court has pondered the continuing

---

[33] *Hudson v. Michigan, supra,* 547 U.S. at page ___ [126 S.Ct. at page 2166].

[34] *Florida v. J. L.* (2000) 529 U.S. 266, 274 [146 L.Ed.2d 254, 120 S.Ct. 1375]; *In re Tony C., supra,* 21 Cal.3d at page 899.

[35] *Delaware v. Prouse* (1979) 440 U.S. 648, 663 [59 L.Ed.2d 660, 99 S.Ct. 1391]; *United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 878 [45 L.Ed.2d 607, 95 S.Ct. 2574]; *People v. Williams* (1999) 20 Cal.4th 119, 138 [83 Cal.Rptr.2d 275, 973 P.2d 52]; *People v. Loewen* (1983) 35 Cal.3d 117, 129 [196 Cal.Rptr. 846, 672 P.2d 436].

[36] *Terry v. Ohio, supra,* 392 U.S. at page 12.

[37] *Terry v. Ohio, supra,* 392 U.S. at page 12, quoting *Mapp v. Ohio* (1961) 367 U.S. 643, 655 [6 L.Ed.2d 1081, 81 S.Ct. 1684].

[38] *United States v. Leon, supra,* 468 U.S. at page 914.

[39] *United States v. Leon, supra,* 468 U.S. at page 926.

[40] *Hudson v. Michigan, supra,* 547 U.S. at page ___ [126 S.Ct. at page 2168].

value of suppressing evidence as a deterrent to police misconduct.[41] In any event, *Hudson* does not signal a majority of the court is ready to scrap the exclusionary rule. As Justice Kennedy states in his concurring opinion, which provided the fifth vote to affirm Hudson's conviction: "[T]he continued operation of the exclusionary rule, as settled and defined by our precedents, is not in doubt. Today's decision determines only that in the specific context of the knock-and-announce requirement, a violation is not sufficiently related to the later discovery of evidence to justify suppression."[42]

■ We conclude, therefore, *if* the trial court finds the officers' justification for stopping defendant's car was a ruse it must suppress the evidence of drugs obtained in the subsequent search.[43]

## II. *ON REMAND THE TRIAL COURT MUST MAKE A FACTUAL DETERMINATION WHETHER THE POLICE STOPPED DEFENDANT'S VEHICLE BECAUSE IT HAD A BURNT-OUT BRAKE LIGHT.*

■ It is beyond dispute stopping the driver of a vehicle for a traffic violation constitutes a "seizure" for purposes of the Fourth Amendment.[44] Therefore, in order for such a stop to be lawful it must be based at least on a "reasonable suspicion" the driver has committed a traffic law violation or some other criminal activity is afoot.[45]

Reasonable suspicion a law has been violated can be based on less than probable cause to believe a violation has occurred but it cannot be based on mere speculation or hunch.[46] Moreover, the reasonableness of an officer's stopping a vehicle is judged against an objective standard: would the facts available to the officer at the moment of the stop " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate[?]"[47] Subjective good faith on the part of the officer is not enough.[48] If the officer

---

[41] See, e.g., *Pennsylvania Bd. of Probation and Parole v. Scott* (1998) 524 U.S. 357, 368–369 [141 L.Ed.2d 344, 118 S.Ct. 2014]; *Illinois v. Gates* (1983) 462 U.S. 213, 261, footnote 15 [76 L.Ed.2d 527, 103 S.Ct. 2317]; *United States v. Janis* (1976) 428 U.S. 433, 449, footnote 21 [49 L.Ed.2d 1046, 96 S.Ct. 3021].

[42] *Hudson v. Michigan, supra,* 547 U.S. at page ___ [126 S.Ct. at page 2170].

[43] This result would have no bearing on defendant's prosecution on the outstanding arrest warrant. (*People v. McGaughran* (1979) 25 Cal.3d 577, 583 [159 Cal.Rptr. 191, 601 P.2d 207].)

[44] *Ornelas v. United States* (1996) 517 U.S. 690, 693 [134 L.Ed.2d 911, 116 S.Ct. 1657]; *People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083 [45 Cal.Rptr.3d 8, 136 P.3d 810].

[45] *People v. Wells, supra,* 38 Cal.4th at page 1083.

[46] *People v. Wells, supra,* 38 Cal.4th at page 1083.

[47] *Terry v. Ohio, supra,* 392 U.S. at page 22.

[48] *Terry v. Ohio, supra,* 392 U.S. at page 22.

turns out to have been mistaken the mistake must be one which would have been made by a reasonable person acting on the facts known to the officer at the time of the stop. Under the foregoing test, a traffic stop will not violate the Fourth Amendment if the officer making the stop reasonably suspects the violation of a traffic law even if later investigation dispels that suspicion.

On remand the trial court is to determine whether the officers testified truthfully in stating the taillight was not illuminated on Rodriguez's vehicle when they detained him.

Such a determination could be based, for instance, on the trial court's disbelief of the apparently disinterested witness's testimony to the effect the taillight was functioning perfectly when he retrieved the vehicle a few days after the incident. But assuming the trial court believes the testimony the taillight was functioning properly shortly after the officers said it wasn't, the burden is on the prosecution to produce evidence explaining how it could have failed during the time the officers were following appellant's car or for some other reason they could have *"reasonably* believed" the light was "burnt out." On the other hand, if the trial court finds the officers lied to Rodriguez when they stopped his vehicle and told him his taillight was out and subsequently committed perjury at the first suppression hearing, for reasons explained above the court should suppress the evidence found in the vehicle and vacate the judgment.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to conduct a new evidentiary hearing and make a factual determination as to whether at the time of the traffic stop defendant's car had a burnt-out brake light or the officers could reasonably have suspected it had a burnt-out brake light. If the court determines the brake light was burnt-out at the time of the traffic stop or the officers could have reasonably suspected the brake light was burnt out, it shall reinstate the judgment. If the court determines the brake light was not burnt out at the time of the traffic stop and no reasonable person could have believed otherwise it shall grant the defendant's suppression motion and proceed in accordance with the law. The defendant is entitled to be present at the rehearing of the suppression motion.

Zelon, J., concurred.

**PERLUSS, P. J.,** Dissenting.—Because the Bell Gardens police officers' discovery of a valid outstanding arrest warrant for Guillermo Rodriguez during the course of their arguably unlawful traffic stop so attenuates the connection between the stop itself and the evidence discovered during their

properly limited search incident to arrest that any taint from the primary illegality has been purged (see *People v. Boyer* (2006) 38 Cal.4th 412, 448, 450 [42 Cal.Rptr.3d 677, 133 P.3d 581] (*Boyer*)), I would affirm the trial court's order denying Rodriguez's motion to suppress. Accordingly, I respectfully dissent.

Evidence need not be suppressed as " 'fruit of the poisonous tree' " even if the evidence would not have come to light but for an infringement of the defendant's Fourth Amendment rights.[1] (*Boyer, supra,* 38 Cal.4th at p. 448; *Hudson v. Michigan* (2006) 547 U.S. ___, ___ [165 L.Ed.2d 56, 126 S.Ct. 2159, 2164] (*Hudson*).) " 'The question is whether the evidence was obtained by the government's exploitation of the illegality or whether the illegality has become attenuated so as to dissipate the taint. [Citation.]' [Citation.]" (*Boyer,* at p. 448.) "Attenuation can occur, of course, when the causal connection is remote. [Citation.] Attenuation also occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." (*Hudson,* at p. ___ [126 S.Ct. at p. 2164.].)

As the majority explains, three factors are typically examined to determine whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: the time elapsed between the illegality and the acquisition of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct. (See *Boyer, supra,* 38 Cal.4th at p. 448; *Brown v. Illinois* (1975) 422 U.S. 590, 603–604 [45 L.Ed.2d 416, 95 S.Ct. 2254].) But the fundamental question remains whether the evidence came from the " 'exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun v. United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 83 S.Ct. 407]; see *United States v. Crews* (1980) 445 U.S. 463, 471 [63 L.Ed.2d 537, 100 S.Ct. 1244] ["In the typical 'fruit of the poisonous tree' case, however, the challenged evidence was acquired by the police *after* some initial Fourth Amendment violation, and the question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality."]; *Boyer, supra,* 38 Cal.4th at p. 448.) In my view, the majority gives far too little significance

---

[1] Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 28, subd. (d); *In re Randy G.* (2001) 26 Cal.4th 556, 561–562 [110 Cal.Rptr.2d 516, 28 P.3d 239]; *In re Lance W.* (1985) 37 Cal.3d 873, 885–890 [210 Cal.Rptr. 631, 694 P.2d 744].)

to the fact the intervening circumstance in this case was the discovery of a valid, outstanding arrest warrant.

The evidence at issue in this case—a baggie containing methamphetamine—was discovered in the automobile driven by Rodriguez during what the majority correctly describes as "a lawful search incident to a lawful arrest based upon an outstanding warrant." The starting point for analyzing Rodriguez's suppression motion, therefore—a point conceded by Rodriguez's counsel at oral argument and not disputed by my colleagues in the majority—is that the Bell Gardens police officers who detained Rodriguez could lawfully arrest him based on that warrant, regardless of the validity of the traffic stop itself. (E.g., *U.S. v. Green* (7th Cir. 1997) 111 F.3d 515, 521 ["It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of 'Olly, Olly, Oxen Free.' "]; *U.S. v. Hudson* (6th Cir. 2005) 405 F.3d 425, 439–440; see *People v. McGaughran* (1979) 25 Cal.3d 577, 583 [159 Cal.Rptr. 191, 601 P.2d 207] [arrest on warrant discovered as result of improperly prolonged traffic stop does not bar prosecution for underlying offense].)

Once it is agreed the officers could lawfully arrest Rodriguez on the outstanding warrant, it necessarily follows the officers were entitled to conduct a properly limited search incident to that arrest, which includes a search of the passenger compartment of Rodriguez's automobile: A lawful arrest in which the defendant is taken into custody gives the arresting officers the right to search the defendant for weapons or evidence at the scene (*Gustafson v. Florida* (1973) 414 U.S. 260, 263–266 [38 L.Ed.2d 456, 94 S.Ct. 488]; *United States v. Robinson* (1973) 414 U.S. 218, 225–236 [38 L.Ed.2d 427, 94 S.Ct. 467]), as well as to search the area within the lunging distance of the arrestee—that is, "the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 89 S.Ct. 2034].) When the arrestee was the occupant of a car, the scope of a lawful search incident to arrest includes the passenger compartment of the car even if the arrestee has been removed and no longer has access to the vehicle. (*New York v. Belton* (1981) 453 U.S. 454, 460–461 [69 L.Ed.2d 768, 101 S.Ct. 2860] [when police officer makes lawful custodial arrest of automobile's occupant, Fourth Amendment allows officer to search vehicle's passenger compartment as contemporaneous incident of arrest]; *Thornton v. United States* (2004) 541 U.S. 615, 617, 622–624 [158 L.Ed.2d 905, 124 S.Ct. 2127].)

If the Bell Gardens police officers were authorized to search the passenger compartment of Rodriguez's automobile, at least in part to protect themselves

from the possibility he could grab a weapon hidden within his reach, what possible interest is served by holding that contraband discovered as a result of that lawful search incident to a lawful arrest should be suppressed? This is not a situation in which the arrest itself is a direct product of the allegedly unlawful traffic stop, as would be the case, for example, when officers arrest a motorist after observing a firearm or illegal drugs in plain view following the stop. (See, e.g., *People v. Parnell* (1993) 16 Cal.App.4th 862, 874–875 [20 Cal.Rptr.2d 302] [gun discovered in plain view following traffic stop].) In those instances it may well be proper to conclude the officers exploited the unlawful traffic stop to search the arrestee's automobile. But here, the outstanding warrant was a judicial order directing the arrest of Rodriguez whenever and wherever he was located. The officers had a right to arrest Rodriguez and a right to search him and the car once he was arrested. In short, the search in this case was the result of the continuing requirement that the arrest warrant be enforced, not the traffic stop itself, even though that stop was the "but for" cause for the timing of his arrest. (See *Hudson, supra,* 547 U.S. at p. ___ [126 S.Ct. at p. 2164] ["Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression."].)[2]

Whether or not the traffic stop itself was proper, the evidence was discovered as a direct consequence of a lawful arrest pursuant to a warrant, not through exploitation of the initial detention. As we have said in a related context, "It would defy common sense to hold seizure of the [contraband] under these circumstances was unreasonable." (*People v. Parnell, supra,* 16 Cal.App.4th at p. 875.)[3]

---

[2] In *Hudson, supra,* 547 U.S. ___ [126 S.Ct. 2159], the United States Supreme Court declined to apply the exclusionary rule to evidence obtained in a search of the defendant's home pursuant to a validly issued search warrant notwithstanding the officers' violation of the knock-and-announce rule. The question in *Hudson,* as it is in this case, where the search also took place pursuant to a valid, judicially issued warrant, was not whether the search would take place, but rather when it would occur. (See *id.* at p. ___ [126 S.Ct. at p. 2165] ["What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable."].)

[3] In *People v. McGaughran, supra,* 25 Cal.3d 577, the Supreme Court held a police officer who stops a motorist for a traffic violation may detain the motorist for as long as is reasonably necessary for the officer to perform the duties required by the stop. (*Id.* at p. 584.) Investigative activities beyond the original purpose of a traffic stop are permissible so long as they do not prolong the stop beyond the time it would otherwise take. (*Ibid.*; see *People v. Brown* (1998) 62 Cal.App.4th 493, 498 [72 Cal.Rptr.2d 793].) Accordingly, "[i]f a warrant check can be completed within the same period, no reason appears to hold it improper: because it would not add to the delay already lawfully experienced by the offender as a result of his violation, it would not represent any further intrusion on his rights." (*McGaughran,* at p. 584.) In explaining what was *not* involved in the case before it, the *McGaughran* court in dicta

Although by no means binding, a number of state supreme courts and federal circuit courts of appeals have reached similar conclusions in similar circumstances. For example, earlier this year in *State v. Frierson* (Fla. 2006) 926 So.2d 1139, 1144, the Florida Supreme Court held, "The brief amount of time that elapsed between the illegal stop and the arrest of respondent weighs against finding the search attenuated, but this factor is not dispositive. In turning to the next factor, the outstanding arrest warrant was an intervening circumstance that weighs in favor of the firearm found in a search incident to the outstanding arrest warrant being sufficiently distinguishable from the illegal stop to be purged of the 'primary taint' of the illegal stop. Crucially, the search was incident to the outstanding warrant and not incident to the illegal stop. The outstanding arrest warrant was a judicial order directing the arrest of respondent whenever the respondent was located. As Judge Gross noted [in the concurring opinion in the intermediate appellate court], 'A warrant indicates the existence of criminal conduct separate from the conduct that occurred at the time of the illegal traffic stop.' [Citation.] The illegality of the stop does not affect the continuing required enforcement of the court's order that respondent be arrested."

Similarly, in *State v. Page* (2004) 140 Idaho 841 [103 P.3d 454, 455] the Supreme Court of Idaho concluded, "[D]iscovery of an outstanding warrant

---

suggested, when an arrest on an outstanding warrant discovered during an unlawful detention results in the seizure and use of incriminating evidence against the arrestee, the defendant may invoke the exclusionary rule. (*Id.* at p. 583.)

I respect the advice of Justice Kaus, offered in *People v. Trice* (1977) 75 Cal.App.3d 984, 986–987 [143 Cal.Rptr. 730], while he was still a member of this court, and would normally follow dicta from the California Supreme Court. (See *ibid.* ["Whether the Supreme Court's obvious awareness of the consequences of its statement elevates the dictum to a holding or whether it is a dictum that we must follow, does not make much difference. We follow."].) In this instance, however, only three other justices concurred in Justice Mosk's opinion for the court in *McGaughran*, including the dicta regarding discovery of evidence during a search incident to an arrest pursuant to a warrant discovered during an unlawful traffic stop; and Justice Newman's concurrence was based solely on the California Constitution (see *McGaughran, supra,* 25 Cal.3d at p. 595 (conc. opn. of Newman, J.)), which, prior to the adoption of article I, section 28, subdivision (d), by Proposition 8 on the June 1982 California primary election ballot, imposed an independent and less exacting standard for the exclusion of unlawfully seized evidence than does the federal Constitution. (See generally *In re Lance W.* (1985) 37 Cal.3d 873, 885–890 [210 Cal.Rptr. 631, 694 P.2d 744].) Moreover, as the United States Supreme Court made plain in *Hudson,* there has been a considerable narrowing in the application of the federal exclusionary rule since the 1970's when *McGaughran* was decided. (See *Hudson, supra,* 547 U.S. at p. ___ [126 S.Ct. at pp. 2163–2164] [" 'Subsequent case law has rejected this reflexive application of the exclusionary rule.' [Citation.]"].) Accordingly, I do not believe exclusion of the evidence found in Rodriguez's car is required under the doctrine of stare decisis. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

for [the defendant's] arrest constituted an intervening event, dissipating any possible taint of unlawful law enforcement conduct." (Accord, *State v. Hill* (La. 1998) 725 So.2d 1282, 1286 ["the discovery of the existence of outstanding arrest warrants gives an officer probable cause to arrest, and may constitute an intervening circumstance within the meaning of *Brown*, which may dissipate the taint caused by prior police misconduct"]; *State v. Jones* (2001) 270 Kan. 526 [17 P.3d 359, 361] [once the officer "learned of the outstanding warrant, he had a right and duty to arrest [the defendant]. Subsequent to the arrest, [the officer] had the right to search [the defendant]."]; *U.S. v. Green, supra*, 111 F.3d at pp. 521, 522 ["The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop." "Where a lawful arrest pursuant to a warrant constitutes the 'intervening circumstance' (as in this case), it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated."]; *U.S. v. Simpson* (8th Cir. 2006) 439 F.3d 490, 495 [same].)

One additional point troubles me about my colleagues' analysis. The majority holds, as I understand it, if the traffic stop was unlawful, then the evidence discovered during the search incident to Rodriguez's otherwise lawful arrest must be suppressed. Why? Because in the view of the majority, if the brake light was not in fact broken at the time of the traffic stop and the Bell Garden police officers cannot adequately explain an objectively reasonable basis for their belief it was (see, e.g., *People v. Saunders* (2006) 38 Cal.4th 1129, 1136 [45 Cal.Rptr.3d 66, 136 P.3d 859] ["The question for us, though, is not whether Ingram's vehicle was in fact in full compliance with the law at the time of the stop, but whether Officer Womack had ' "articulable suspicion" ' it was not."]; see generally *Illinois v. Rodriguez* (1990) 497 U.S. 177, 184 [111 L.Ed.2d 148, 110 S.Ct. 2793] [" 'reasonableness,' with respect to this necessary element, does not demand that the government be factually correct in its assessment"]), then the officers' testimony at the suppression hearing must be perjury. Yet, even if the officers were mistaken about the operating condition of the right brake light and the trial court concludes their actions were not objectively reasonable (see *Graham v. Connor* (1989) 490 U.S. 386, 397 [104 L.Ed.2d 443, 109 S.Ct. 1865] ["the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable [action]; nor will an

officer's good intentions make an objectively unreasonable [act] constitutional"]), it does not necessarily follow the officers' testimony at the initial suppression hearing constituted perjury. Honest mistakes happen, even when police officers are involved. Accordingly, I believe it is premature to conclude, as does the majority, if the traffic stop was improper, the officers involved in stopping Rodriguez necessarily engaged in flagrant misconduct that requires suppression of the methamphetamine discovered in his car. (See *Boyer, supra*, 38 Cal.4th at p. 449 [issues of attenuation properly resolved on appeal only if their factual bases are fully set forth in the record]; *People v. Robles* (2000) 23 Cal.4th 789, 801, fn. 7 [97 Cal.Rptr.2d 914, 3 P.3d 311] [same].)

For all of these reasons, I respectfully dissent.