Filed 10/28/14  P. v. Hamilton CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT RICHARD HAMILTON,<br><br>    Defendant and Appellant. | F067582<br><br>(Super. Ct. No. MF010366A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Following the denial of his motion to suppress evidence, defendant Robert Richard Hamilton pled no contest to transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and being a felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1)). He also admitted a strike prior and a prison prior.

On appeal, defendant asserts the trial court erred in denying his motion to suppress evidence because the initial detention was not a valid traffic stop. We find no error and will affirm.

## BRIEF FACTUAL BACKGROUND

On January 5, 2013, about 11:30 p.m., Kern County Sheriff's Deputy Sean Mountjoy noticed a truck whose rear license plate was not fully legible because it was missing its reflective coating. Additionally, the plate was obscured by a trailer hitch ball. As the deputy followed the vehicle, he also noticed an inoperable rear light. After stopping defendant for these Vehicle Code violations, controlled substances were subsequently found as the result of a consensual search.[2]

## DISCUSSION

Defendant contends the trial court erred by denying his motion to suppress evidence under section 1538.5 because the initial stop was invalid. More particularly, he complains the deputy's concerns about the license plate were questionable because the deputy could read the plate when he approached defendant's vehicle at the time of the stop. Further, he asserts the brake light was not tested, and in combination with the aforementioned, the fact no citations were issued equates to a lack of reasonable suspicion to justify the initial stop.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Further details regarding the traffic stop will be addressed in the Discussion below.

**Legal Standards**

Our review of the reasonable suspicion, scope, and duration of investigative stops involves mixed questions of law and fact. The trial court's determination of disputed facts as well as any inferences reasonably drawn will be given deference, and any judgments based on those facts will be upheld where there is substantial evidence to support them. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1032-1033.) However, whether the search and seizure law was properly applied to those facts is a question of law that we will review de novo. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

The Fourth Amendment protects against unreasonable searches and seizures. (*Terry v. Ohio* (1968) 392 U.S. 1, 4.) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The "reasonable suspicion" necessary to justify an investigative detention is "obviously less demanding than that for probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7.)

An investigative stop must be based on objective facts, or inferences, that give rise to a reasonable suspicion of a past, current, or future legal violation. The subjective intent or ulterior motives of law enforcement in conducting searches do not invalidate their otherwise lawful justifications. (*United States v. Whren* (1996) 517 U.S. 806, 812-813.) Moreover, an officer's decision not to issue a citation for a violation does not invalidate the justification for the stop. (See *People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1143-1144; see also *Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 510 [failure of law enforcement to issue citation is "irrelevant for purposes of determining … reasonable suspicion"].)

### The Condition of Defendant's Truck Provided Reasonable Suspicion to Support the Stop

Deputy Mountjoy testified he stopped defendant's vehicle because the license plate was obstructed by a trailer hitch ball, was missing its reflective coating, and had an inoperable rear light. We address the bases for the stop below.

#### The License Plate

Vehicle Code section 5201, subdivision (a) provides, in pertinent part, that "[l]icense plates shall at all times be … mounted in a position so as to be clearly visible, and so that characters are upright and display from left to right, and shall be maintained in a condition so as to be clearly legible." Here, defendant's license plate was not clearly visible or legible and, thus, provided a basis for the initial stop.

Deputy Mountjoy indicated he first noticed defendant's truck because he could not read the rear license plate. Specifically, he could not read the entire plate because it lacked its reflective coating and also because a trailer hitch ball blocked his view of the plate. As a result, Deputy Mountjoy was unable to read one or two characters on defendant's plate. The lack of reflective coating caused a "gray haze," affecting the deputy's view.

After hearing testimony and argument, the trial court denied defendant's motion, stating the "Vehicle Code violations allowed the deputies to stop the defendant." We accept the trial court's implied factual finding that the trailer hitch ball and lack of reflective coating provided Deputy Mountjoy with a reasonable suspicion that traffic violations had occurred. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Defendant's reliance upon *People v. White* (2001) 93 Cal.App.4th 1022 to support his argument is misplaced, and his attempt to distinguish it is unpersuasive. In *White*, the defendant was detained because an officer noticed the defendant's trailer hitch ball obstructed the officer's view of the middle numeral on the license plate. (*Id*. at p. 1024.) In finding the officer had a lawful basis upon which to detain the vehicle and its driver, the appellate court held "the Legislature intended in enacting the noted Vehicle Code

4.

section that the view of the license plate be entirely unobstructed." (*Id.* at p. 1025.) A "license plate must not be obstructed in any manner and must be entirely readable. A license plate mounted in a place that results in it being partially obstructed from view by a trailer hitch ball violates Vehicle Code section 5201," (*id*. at p. 1026) providing a valid basis upon which to effect a detention.

Defendant attempts to distinguish his situation from the one in *White* by arguing Deputy Mountjoy was able to read the entire plate after the stop, relieving any possible violation. Such a distinction was not addressed in *White* and we find it to be irrelevant. The fact that a closer inspection of a license plate on foot allows an officer to look around an obstruction does not affect whether the normal view of the plate was obstructed in the first instance.

As noted above, Deputy Mountjoy's view of defendant's license plate was obstructed by the trailer hitch ball. Specifically, he testified at the hearing on the motion that it was "impossible for [him] to read the entire plate." On cross-examination, the deputy stated he was unable to read the plate prior to stopping defendant. In addition to being unable to read "one, maybe two" of the plate's characters as he exited his patrol car, the plate was further obstructed by a lack of reflective coating, causing a "gray haze over the entire plate." Similar to *White*, the fact Deputy Mountjoy could not read defendant's license plate when his vehicle was first spotted, and could not read a character or two once defendant's truck was stopped, provided reasonable justification for the stop.

This court addressed an investigative stop on a basis similar to the instant case in *People v. Gonsoulin* (1971) 19 Cal.App.3d 270. There, officers stopped a vehicle because "the rear license place was smudged, obscuring the state of origin and some of the numbers …." (*Id.* at p. 272.) The officers followed the vehicle for several miles, never making any attempt to view the front license plate. (*Id*. at p. 274.) They conducted an initial stop based on the license plate and then directed the car to drive back to a service station for further investigation. (*Ibid.*) The officers did not observe any other

violation of law. Ultimately, no citation was issued for the license plate infraction. (*Ibid.*)

In *Gonsoulin*, we determined the stop was invalid because the detention continued well beyond what was necessary given the suspected violation, not because of the initial stop. (*People v. Gonsoulin*, *supra*, 19 Cal.App.3d 270.) In fact, we stated "the stopping of [the] automobile may not, of itself, have been improper or the subsequent investigation of the vehicle's ownership and Gonsoulin's identity unlawful …." (*Id.* at p. 274.) Rather, it was our finding that the "officer's conduct, both before and after he stopped the vehicle, [gave] credence to [the] argument that [the officer] was on a 'fishing expedition' from the very beginning," (*ibid.*) compelling us to conclude the detention in that case was intrusive and extensive. (*Id.* at pp. 274-276.) For those reasons, defendant's reliance on *Gonsoulin* is also misplaced. There are no facts indicating Deputy Mountjoy was on a fishing expedition.

**The Inoperable Rear Light**

As a second justification for the stop, Deputy Mountjoy noticed one of the vehicle's rear lights was inoperable. Defendant does not argue the light was functioning properly. Instead, he contends the deputy should have inspected the light after stopping defendant's vehicle.

Initially, whether Deputy Mountjoy was referring to a "stoplamp" or a "taillamp" is inconsequential because, as defendant notes in his opening brief, the Vehicle Code requires all installed lights to function properly. Vehicle Code section 24252 states, "All lighting equipment … shall at all times be maintained in good working order." And, we find no reason to question the trial court's implied finding that Deputy Mountjoy had reasonable suspicion that a rear light was inoperable. (*People v. Glaser*, *supra*, 11 Cal.4th at p. 362.)

The failure to maintain lighting equipment in good working order is a valid justification for a traffic stop. The Fourth Appellate District addressed this issue in *In re Justin K.* (2002) 98 Cal.App.4th 695. In that case, the court held that even inoperable

6.

supplemental lighting required by federal law can provide valid justification for a stop under Vehicle Code section 24252. (*In re Justin K.*, at pp. 698-699.)

Moreover, defendant's reliance on *People v. Grace* (1973) 32 Cal.App.3d 447 is misplaced. In *Grace*, the officer indicated an inoperable brakelight was the reason for the stop; however, he also stated that before approaching the driver he had discerned the light was in fact operable. (*Id.* at p. 450.) The appellate court held the officer's "right to detain the driver ceased as soon as he discovered the brakelight was operative and not in violation of statute." (*Id.* at p. 451.) Unlike *Grace*, here there is nothing to indicate defendant's rear light was operable. Deputy Mountjoy certainly never testified that he later noted it actually functioned properly.

Defendant also argues the deputy's suspicion was unreasonable because he did not further inspect the rear light after the stop. Significantly, we have not identified any authority that would require the officer to further inspect the brakelight, nor has defendant provided us with any. Notably, too, *Grace* does not stand for such a proposition.

**Failure to Issue Citation**

To the degree defendant contends reasonable suspicion for the stop did not exist because no citations were issued, his argument lacks merit. The decision by Deputy Mountjoy whether to cite defendant for the suspected violations occurred separate from the reasonable suspicion determination and after the detention had already occurred.

In *People v. Rodriguez, supra*, 143 Cal.App.4th 1137, the appellant challenged a stop based on an inoperable taillight by arguing the taillight was in fact functioning properly. That court found there was evidence "the officers may have invented a justification for the traffic stop." (*Id.* at p. 1143.) The appellate court remanded the matter for the trial court to determine whether the light was actually functioning properly, which would make the officers' proffered justification unreasonable. (*Id.* at p. 1149.)

Defendant does not argue the license plate was free from obstruction here, however, nor does he argue the rear light was functioning properly. Instead, defendant

7.

argues Deputy Mountjoy's suspicion was unreasonable because he issued no citation for these violations. Nevertheless, as explained in *Rodriguez*, the lack of a citation "goes only to the *credibility* of [an officer's] reason" but is not dispositive of a reasonable suspicion determination. (*People v. Rodriguez*, *supra*, 143 Cal.App.4th at p. 1144, fn. 13.) There is nothing in this record to indicate Deputy Mountjoy invented the justifications offered for the traffic stop. As such, we find defendant's argument unpersuasive.

Moreover, "whether [Deputy Mountjoy] ultimately did or did not cite [defendant] for [Vehicle Code violations] is irrelevant for purposes of determining whether or not [Deputy Mountjoy] had reasonable suspicion to stop [defendant]." (*Brierton v. Department of Motor Vehicles*, *supra*, 130 Cal.App.4th at p. 510.) "A traffic stop is lawful at its inception if it is based on a reasonable suspicion that *any* traffic violation has occurred, even if it is ultimately determined that no violation did occur." (*Ibid.*)

**Conclusion**

In sum, Deputy Mountjoy had reasonable suspicion to stop defendant's vehicle. Further, the trial court impliedly accepted the deputy's reasons for the stop. Therefore, the trial court did not err in denying defendant's motion to suppress evidence.

## DISPOSITION

The judgment of the trial court in denying defendant's section 1538.5 motion is affirmed.