**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46744**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 21, 2020** |
| **Plaintiff-Appellant,** | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) |
| COLLEY W. LOOSLI, | ) |
| | ) |
| **Defendant-Respondent.** | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Daniel L. Steckel and Hon. Howard Smyser, Magistrates.

Order of the district court, on intermediate appeal from the magistrate court, reversing order denying motion to suppress, reversed; case remanded.

Anthony R. Geddes, Ada County Public Defender; Jessica A. H. Howell, Deputy Public Defender, Boise, for appellant. Jessica A. H. Howell argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

LORELLO, Judge

The State appeals from an order of the district court, on intermediate appeal from the magistrate court, reversing the magistrate court's order denying Colley W. Loosli's motion to suppress. We reverse the decision of the district court and remand the case for further proceedings.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer on patrol observed Loosli riding a bicycle down an alleyway. The officer parked his patrol vehicle and exited the vehicle as Loosli approached. The officer did not activate the patrol vehicle's overhead lights or block Loosli's path. During the interaction, the

1

officer asked if he could see Loosli's driver's license and then asked if he could write down the information on the license. Loosli agreed to both. After recording the information, the officer returned the license to Loosli. The two engaged in additional conversation during which the officer asked Loosli if he had anything illegal and whether he minded if the officer checked. Loosli gave an ambiguous response, which the officer attempted to clarify. However, prior to the search, Loosli began reaching into his pocket and, at one point, threw an item away from him. The officer placed Loosli under arrest and recovered the thrown item, which was drug paraphernalia. The officer also discovered paraphernalia in Loosli's pocket. The State charged Loosli with possession of drug paraphernalia and destruction or concealment of evidence.

Loosli filed a motion to suppress, arguing he was illegally detained and that his license was illegally seized without reasonable suspicion. The State responded that "the entire contact was consensual until [Loosli] made concerning movements and then threw an object." At the suppression hearing, Loosli argued that "retaining a driver's license amounts to a seizure." The magistrate court concluded the encounter was consensual and denied Loosli's motion to suppress. Loosli entered a conditional guilty plea to possession of drug paraphernalia and the State agreed to dismiss the remaining charge. Loosli appealed to the district court, and the district court reversed. The State appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate court's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do not review the decision of the magistrate court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

2

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues that the district court erred in reversing the magistrate court's denial of Loosli's motion to suppress because the encounter between Loosli and the officer was consensual since Loosli consented to both the officer's initial request for Loosli's license and the brief retention of it to record its information. Loosli responds that the district court's decision was correct because an illegal seizure occurred when the officer asked for and retained Loosli's license without reasonable suspicion. We hold that the district court erred in reversing the magistrate's decision because the officer received and retained Loosli's license with his consent.

The Fourth Amendment to the United States Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and

ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*; *see also Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984) (noting that "while most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response").

In its intermediate appellate decision, the district court concluded there was no seizure at the outset of the encounter between Loosli and the officer because Loosli "could have ridden by the officer but didn't." The district court also stated: "When asked for his driver's license, [Loosli] could have refused but didn't." Nevertheless, the district court concluded the encounter was unlawful, reasoning:

> While not "ordered" to produce the license, no wise or prudent person would bicycle away leaving his license behind. A decision should not depend on the syntax of the officer - that is, asking or telling, "May I see your license?" "Let me see your license." The license was obtained and held for no apparent reason except curiosity and fishing for leads to something that is unidentified in this record. Politeness and phrasing should not diminish the right to be left alone except for an articulable reason. The license was requested and held for no articulated reason. No reasonable person would feel free to ride away leaving that document behind. This is the type of encounter that troubled the Idaho Supreme Court in [*State v. Page*, 140 Idaho 841, 103 P.3d 454 (2004)].

We agree with the district court's conclusion that the officer engaged in a consensual encounter with Loosli. We also agree with the conclusion that Loosli could have refused to provide his license to the officer, but did not. Such a conclusion necessarily means that the encounter continued to be consensual when Loosli voluntarily provided his license. Whether Loosli (or a reasonable person in his position) would feel free to ride away without his license after he provided it could not retroactively render his prior consensual act involuntary. In order for the otherwise consensual encounter to become a seizure, there would have to be some intervening act by the officer that communicated Loosli was not free to leave or request return of his license. Loosli identified no such act in this case and the record shows the opposite. After requesting permission to see Loosli's license, the officer requested permission to write down the information on it, and Loosli agreed. The mere act of making such a request and acting on the request upon receiving consent to do so does not constitute a seizure. *See State v. Nickel*, 134

4

Idaho 610, 613, 7 P.3d 219, 222 (2000) (holding that interrogating a person concerning his identification or requesting identification does not, without more, constitute a seizure). We do not interpret *State v. Page*, 140 Idaho 841, 103 P.3d 454 (2004) as holding otherwise.

In *Page*, an officer encountered Page walking down the middle of the street at 2 a.m. The officer approached Page and asked if he could talk to him. Page agreed. After inquiring about Page's well-being, the officer asked Page for identification and he produced a driver's license. The officer "took the license back to his vehicle, telling Page he was going to check his name with the station to let them know who he had stopped." *Page*, 140 Idaho at 843, 103 P.3d at 456. After dispatch advised the officer that Page had an outstanding warrant, the officer arrested Page. The Idaho Supreme Court held that the initial encounter with Page, including the request for identification, was consensual. In doing so, the Court noted the record was "devoid of evidence that the officer officially 'stopped' Page or otherwise restrained his liberty, either by physical force or show of authority." *Id.* at 844, 103 P.3d at 457. Rather, the officer "simply approached Page on a public street to ask a few questions and examine his identification" and "Page complied with these requests without objection." *Id.* Because there was "no indication that the officer threatened or touched Page, displayed his weapon, or exhibited other intimidating behavior that would indicate Page was not free to simply discontinue the encounter and walk away," the encounter was consensual and did not implicate the Fourth Amendment. *Id.* The Court in *Page* separately addressed whether the retention of Page's license to conduct a warrant search constituted a seizure. In concluding that it did, the Court held that the totality of the circumstances "showed no compelling need to seize the identification and conduct a warrants check." *Id.* at 845, 103 P.3d at 458.

As in *Page*, Loosli voluntarily provided his license and there was no indication that the officer engaged in any behavior that would indicate Loosli was not free to simply discontinue the encounter and walk away. Indeed, Loosli never advanced such an argument and, notably, continued to speak with the officer after his license was returned.[1] Thus, Loosli cannot claim

---

[1]     To the extent Loosli is arguing on appeal that his consent was involuntary, that argument is not preserved as it was not the basis of his motion to suppress. Loosli's motion to suppress asserted that the request for and retention of his license was unlawful because it was not based on reasonable suspicion. Appellate court review is limited to the evidence, theories, and arguments

that he was seized by virtue of the officer holding his license once the license was returned to him. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that there is no constitutional intrusion upon a person's liberty or privacy as long as the person to whom questions are asked remains free to disregard the questions and walk away).

Unlike *Page*, the officer did not seize Loosli's license to conduct a warrants check. Instead, the officer "examined" Loosli's license, a lawful act under *Page*, received Loosli's permission to record the information on it; and returned the license to Loosli immediately thereafter. The officer never took the license to his patrol car to conduct a warrants check or otherwise impaired Loosli's ability to revoke his consent and discontinue the encounter. *Compare State v. Zapata-Reyes*, 144 Idaho 703, 707, 169 P.3d 291, 295 (Ct. App. 2007) (noting that a seizure occurs when an officer secures a pedestrian's driver's license *and* runs his name through dispatch to check for outstanding warrants). Rather, the officer's actions were within the scope of the consent granted by Loosli. *See State v. Greub*, 162 Idaho 581, 585, 401 P.3d 581, 585 (Ct. App. 2017) (noting that, when a search is based on consent, the State must conform its search to the limitations placed upon the right granted by the consent).

Loosli argues that the Idaho Supreme Court's decision in *State v. Cohagan*, 162 Idaho 717, 404 P.3d 659 (2017) also supports the district court's conclusion. The Court in *Cohagan* did not address whether the retention of Cohagan's license constituted a seizure because the State conceded the point in district court. *Id.* at 721, 404 P.3d at 663. The Court did, however, discuss its decision in *Page* noting that "*Page* is important for its discussion of the illegal seizure." *Cohagan*, 162 Idaho at 724, 404 P.3d at 666. As noted, the illegal seizure in *Page* was seizing the identification to conduct a warrants check. Because that is not what occurred in Loosli's case, the decision in *Cohagan* does not support the district court's conclusion for the same reason the decision in *Page* does not. Thus, the district court erred in reversing the magistrate court's denial of Loosli's motion to suppress.

---

that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Moreover, neither the magistrate court nor the district court analyzed the voluntariness of Loosli's consent.

## IV.

### CONCLUSION

The district court erred in determining that Loosli was seized when he consented to giving the officer his license and to allowing the officer to briefly retain it to record the information on it. Accordingly, the order of the district court, on intermediate appeal from the magistrate court, is reversed and the case is remanded for further proceedings.[2]

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.

---

[2]     Although the district court did not vacate the judgment of conviction, and the magistrate court did not stay execution of the sentence when judgment was entered, Loosli filed a motion to stay his sentence pending appeal after the district court entered its intermediate appellate decision and after the appeal was pending in this Court. It appears that the motion to stay was filed in response to proceedings related to a motion for probation violation, which was based in part on Loosli's failure to serve his three-day jail sentence. The magistrate court granted the motion to stay.