103 P.3d 454

STATE of Idaho, Plaintiff–Appellant,

v.

Arnold W. PAGE, Defendant–Respondent.

No. 29735.

Supreme Court of Idaho,
Lewiston, October 2004 Term.

Dec. 15, 2004.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant; Kenneth K. Jorgensen argued.

John M. Adams, Kootenai County Public Defender, Coeur d'Alene, for respondent; J. Bradford Chapman argued.

TROUT, Justice.

The State of Idaho, appeals from an order granting the defendant Arnold W. Page's motion to suppress evidence. Page was arrested on an outstanding arrest warrant after a late-night encounter with a police officer. A search incident to his arrest yielded illegal drugs and drug paraphernalia. Page was charged with multiple drug-related offenses and filed a motion to suppress, claiming the evidence against him was obtained pursuant to an illegal detention. The district court agreed and suppressed the evidence. This Court holds that discovery of an outstanding warrant for Page's arrest constituted an intervening event, dissipating any possible taint of unlawful law enforcement conduct and the district court's order granting the motion to suppress is reversed.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 2:00 a.m. on March 1, 2003, Post Falls City police officer David Marshall was on patrol when he observed the defendant Arnold Page walking down the middle of a roadway carrying some bags. There were no vehicles on the roadway and the street was located in a residential area that lacked sidewalks. Without activating his overhead lights, Officer Marshall stopped his marked patrol vehicle behind Page, exited the vehicle and approached Page to speak

with him on the side of the road. Officer Marshall asked Page if he could talk to him for a moment and Page replied, "[S]ure." After inquiring about Page's well-being, Officer Marshall asked Page for some identification and was handed an Idaho driver's license in the name of Arnold Page. Officer Marshall then took the license back to his vehicle, telling Page he was going to check his name with the station to let them know who he had stopped.

Officer Marshall was then told by dispatch that Page had an outstanding warrant for his arrest. Page was placed under arrest and during a search incident to that arrest, methamphetamine, marijuana and drug paraphernalia were found in a black case located in Page's coat pocket. Page was charged with possession of methamphetamine, misdemeanor possession of marijuana and misdemeanor possession of drug paraphernalia. He filed a motion to suppress, arguing the evidence against him was obtained pursuant to an unconstitutional detention made without a reasonable articulable suspicion. After a hearing on the matter, the district judge determined Officer Marshall was acting lawfully within the scope of his community caretaking function when he initially contacted Page. The judge ruled, however, that the detention of Page for the purposes of retrieving his driver's license and running his name through dispatch exceeded the permissible scope of the officer's community care-taking function and constituted an unlawful seizure. The district judge granted Page's motion to suppress from which the State timely filed this appeal.

## II.

### STANDARD OF REVIEW

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found. *State v. Holland,* 135 Idaho 159, 15 P.3d 1167 (2000).

## III.

### ANALYSIS

The principal issue before this Court is whether the district judge erred in granting the motion to suppress. This issue primarily implicates two areas of analysis. First, we must decide whether the initial encounter was lawful, including whether the officer's action in taking Page's driver's license back to the patrol vehicle to run a records check constituted an unlawful seizure. Second, we analyze whether the discovery of a valid warrant for Page's arrest dissipated any possible taint of unlawful police conduct.

### A. The Lawfulness of the Initial Police Encounter

The State maintains that the application of correct legal principles to the facts presented to the district court demonstrate that the initial encounter between Page and the police was consensual and did not implicate Page's Fourth Amendment rights. Although the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by government officials, not every police/citizen encounter triggers Fourth Amendment scrutiny. This Court has held that "[a] seizure under the meaning of the Fourth Amendment occurs only 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *State v. Nickel,* 134 Idaho 610, 612–13, 7 P.3d 219, 221–22 (2000) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968)).

■ "When a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the burden of proving that a seizure occurred is on the defendant." *State v. Reese,* 132 Idaho 652, 654, 978 P.2d 212, 214 (1999). Therefore, the proper inquiry in determining whether a seizure occurred is "whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter." *Id.* at 653, 978 P.2d at 213. This rule has been otherwise stated that " '[s]o long as a reasonable person would feel

free to disregard the police and go about his business,' an encounter between police and an individual is consensual." *Nickel*, 134 Idaho at 613, 7 P.3d at 222 (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991)).

▮ In granting Page's motion to suppress, the district judge did not make any explicit factual findings, other than to determine that the initial encounter, including the initial questioning of Page, was accomplished pursuant to the officer's community caretaker function. This finding is supported by substantial evidence. The community caretaker function arises from the duty of police officers to help citizens in need of assistance. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The officer clearly had reason under his community caretaker function to approach Page and make sure everything was alright when he noticed Page walking down the middle of a public street late at night. The record indicates the officer did not activate his overhead lights, nor did the circumstances of the encounter suggest that the officer was effectuating an investigatory stop based upon a reasonable suspicion that Page may have been involved in illegal activity.

▮ In fact, the record is devoid of evidence that the officer officially "stopped" Page or otherwise restrained his liberty, either by physical force or show of authority at this time. Officer Marshall simply approached Page on a public street to ask a few questions and examine his identification. Page complied with these requests without objection. This Court has previously held that "[i]nterrogating a person concerning his identification or requesting identification does not, without more, constitute a seizure." *Nickel*, 134 Idaho at 613, 7 P.3d at 222. Further, no seizure has occurred when an officer simply approaches an individual on the street or other public place, by asking him if he is willing to answer some questions, or by putting questions to him if he is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). There is no indication that the officer threatened or touched Page, displayed his weapon, or exhibited other intimidating behavior that

would indicate Page was not free to simply discontinue the encounter and walk away. *See, e.g., State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999). Therefore, the officer's initial contact with Page is clearly the sort of consensual encounter that does not implicate any Fourth Amendment rights.

▮ However, the district judge granted Page's motion to suppress on the basis that Page was unlawfully seized at the point in time when Officer Marshall secured his driver's license and ran his name through dispatch to check for outstanding warrants. This Court has previously held that a limited detention does occur when an officer retains a driver's license or other paperwork of value. *State v. Godwin*, 121 Idaho 491, 493, 826 P.2d 452, 454 (1992); *See also State v. Martinez*, 136 Idaho 436, 439, 34 P.3d 1119, 1122 (Ct.App.2001). In determining whether a particular community caretaker-related contact justifies a detention, Idaho courts must analyze "whether the intrusive action of the police was reasonable in view of all the surrounding circumstances." *Wixom*, 130 Idaho at 754, 947 P.2d at 1002 (quoting *State v. Waldie*, 126 Idaho 864, 867, 893 P.2d 811, 814 (Ct.App.1995)).

There must be a sufficient public interest furthered by the detention to outweigh the degree and nature of the intrusion upon the privacy of the detained citizen. *U.S. v. Brignoni–Ponce*, 422 U.S. 873, 880–81, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607, 615–16 (1975); *See also Godwin*, 121 Idaho at 495–96, 826 P.2d at 455–56. There must also be some genuine and warranted concern by the officer to justify the detention of a citizen and not simply the officer's curiosity or an unsubstantiated suspicion of criminal activity. *See, e.g., Wixom*, 130 Idaho at 754, 947 P.2d at 1002 (community caretaking did not justify the stop of a motorist passing by an accident scene long after the accident so the officer could inquire whether the occupants had any information about the accident); *State v. Schmidt*, 137 Idaho 301, 47 P.3d 1271 (2002) (community caretaking was not a justification for the detention of individuals sitting in a car lawfully parked on an unimproved pullout after dark in the winter on the officers' sub-

jective belief, unsupported by any evidence, that the vehicle might have run off the road).

■ The State contends this limited detention was reasonable under well-established principles of search and seizure and therefore did not violate Page's constitutional rights. The State relies heavily on this Court's previous decision in *Godwin* to support the proposition that the brief retention of a driver's license or other identifying paperwork during an otherwise lawful police contact is reasonable, because the intrusion upon the person's privacy interest is minimal when compared to the valid public/governmental interests, including the officer's need to properly identify the person with whom he is dealing, prepare accurate reports and ensure officer safety. *Godwin*, 121 Idaho at 493–94, 826 P.2d at 454–55. In *Godwin*, a plurality decision, the defendant stopped his car on the side of the road to wait for a friend who had been pulled over by the Idaho State Police. A second police officer approached Godwin and asked to see his license. A license check revealed that Godwin's license was suspended. Godwin argued that it was unreasonable for the officer to request his license but the Court found that "a police officer's brief detention of a *driver* to run a status check on the driver's license, after making a valid, lawful contact with the driver, is reasonable for purposes of the Fourth Amendment." *Id.* at 494–95, 826 P.2d at 455–56 (emphasis added).

However, *Godwin* does not lend support to the legality of the seizure of Page's driver's license in this case. First, the Court in *Godwin* was heavily influenced by the fact that I.C. § 49–316 requires a driver to surrender a driver's license to a police officer upon demand and that "[t]he statutory authority for police to demand a driver's license would mean little if the police could not check the validity of the license." *Id.* at 496, 826 P.2d at 457 (quoting *State v. Ellenbecker*, 159 Wis.2d 91, 464 N.W.2d 427, 430 (Ct.App. 1990)). No equally compelling policy or statutory authority can be cited in the case of seizing a license from a pedestrian. The State does not distinguish the policy differences between taking a driver's license from the operator of an automobile, and taking

any form of identification from a pedestrian. Also, the *Godwin* decision notes that "police officers do not have unfettered discretion to stop drivers and request a display of a driver's license" to conduct a random status and/or warrants check. *Id.* at 496, 826 P.2d at 457. The request for the license and action in running it through dispatch must be reasonable under the circumstances.

In this case, the totality of the circumstances presented to Officer Marshall showed no compelling need to seize the identification and conduct a warrants check; nor were there facts present that legitimized the detention of Page once the officer determined, pursuant to his community caretaker function, that Page was not in need of assistance. Appellant has also not demonstrated a particularized or objective justification for detaining Page. This Court is concerned about the implications of a rule allowing law enforcement officers the ability to initiate consensual encounters with pedestrians in order to seize identification and run a warrants check. Twenty-five years ago the United States Supreme Court made clear the general rule that in the absence of any basis for suspecting an individual of misconduct, the Fourth Amendment generally does not allow government agents to detain an individual and demand identification. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Thus, at that point, Page was improperly detained and the question then becomes whether there is any justification for the officer's subsequent search.

**B. The Discovery of a Warrant for Page's Arrest**

■ Even if the officer's conduct in seizing Page's license was not justified, the State contends the district judge's order granting suppression should be reversed because of the discovery of a valid arrest warrant. The State argues there was a valid probable cause determination and Page was subject to arrest long before Officer Marshall ever initiated his contact with Page. As support for its contention, the State cites *United States v. Green*, 111 F.3d 515 (7th Cir.1997), where the court held that an outstanding arrest warrant gives the officer independent probable

cause such that, had the officers acted unlawfully, the warrant would constitute an intervening circumstance dissipating the taint of the illegality.

 Generally, evidence obtained as the result of an unlawful search may not be used against the victim of the search. *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453 (1963). To determine whether to suppress evidence as "fruit of the poisonous tree," the court must inquire whether the evidence has been recovered as a result of the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Green,* 111 F.3d at 520. The attenuation doctrine—whether the causal chain has been sufficiently attenuated to dissipate the taint of the unlawful conduct—has been used to support the admission of evidence, including for example, voluntary confessions obtained after unlawful arrests. *Id.* at 522 (citing *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). There are three factors for a court to consider when determining whether unlawful conduct has been adequately attenuated. *Id.* at 521 (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 426–427). The factors are: (1) the elapsed time between the misconduct and the acquisition of the evidence, (2) the occurrence of intervening circumstances, and (3) the flagrancy and purpose of the improper law enforcement action. *Id.*

In *Green,* the police stopped a car in which they believed Williams, a known fugitive, might be riding because the car had been observed parked in front of his home on one occasion. Although Williams was not present, the officers obtained the identification of the car's occupants, David and Avery Green, and ran a computer check, which revealed that Avery was wanted on a warrant. This occurred within five minutes of the initial detention. The police promptly arrested Avery, and when a search of the car pursuant to that arrest revealed narcotics and a gun, they arrested David. There was no claim that the Greens fit Williams' description and the court held that based on those circumstances the *Terry* stop was not justified at its inception. *Id.* at 520. However, the court also determined that the valid arrest pursuant to an open warrant constituted one of the attenuating factors, albeit an important one, in determining whether the challenged evidence was obtained by exploitation of the initial illegal detention of the defendants. *Id.* at 522.

Further, in examining the third *Brown* factor, the flagrancy and purpose of unlawful official conduct, the court did not "condone" the conduct but ruled that it was not so shocking as to "tilt the scales against attenuation." *Id.* at 523 (quoting *United States v. Boone,* 62 F.3d 323, 325 (10th Cir.1995)). Therefore the court explained that the outstanding warrant was enough of an intervening circumstance to dissipate the prior taint because:

> It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of [Green] constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.

111 F.3d at 522. Other jurisdictions that have found *Green* persuasive have also adopted the rule that an outstanding arrest warrant gives the officer independent probable cause to arrest such that, had the officers acted unlawfully, the warrant would constitute an intervening circumstance dissipating the taint of an unlawful seizure. *See, e.g., Fletcher v. State,* 90 S.W.3d 419 (Tex.App. 2002); *State v. Jones,* 270 Kan. 526, 17 P.3d 359 (2001); *State v. Hill,* 725 So.2d 1282 (La.1998); *Ruffin v. State,* 201 Ga.App. 792, 412 S.E.2d 850 (1991).

We find the attenuation analysis in *Green* to be persuasive. Here, there was a minimal lapse of time between the seizure of the license and the search pursuant to a valid arrest warrant. The police officer's conduct was certainly not flagrant, nor was his purpose improper. Clearly, once the officer discovered that there was an outstanding warrant, an intervening event under *Green,* he

did not have to release Page and was justified in arresting him at that point. Once he had effectuated a lawful arrest, he was clearly justified in conducting a search incident to that arrest for the purpose of officer or public safety or to prevent concealment or destruction of evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Therefore, it was not unlawful for the officer to seize the drugs discovered incident to that arrest.

 It is important to note that had the drug evidence in this case been seized after the officer seized Page's license and took it back to the patrol vehicle, but prior to discovery of the valid warrant, the considerations outlined in *Green* would not justify the conclusion that the evidence was sufficiently attenuated from improper police conduct so as to be admissible. *See, e.g., State v. Maland,* 140 Idaho 817, 103 P.3d 430, 2004 WL 2930716 (November 24, 2004). In such a case, evidence seized prior to the arrest, unless justified by some other exception, would not be admissible simply because, ultimately, a valid arrest warrant was discovered. A judicial determination of probable cause focuses on the information and facts the officers possessed at the time. *State v. Schwarz,* 133 Idaho 463, 467, 988 P.2d 689, 693 (1999). It is only the fact that there was an intervening factor between the unlawful seizure and discovery of the evidence—the discovery of the warrant in this case—that creates the exception, which permitted the officer to arrest Page and made the subsequent seizure of evidence admissible.

## IV.

### CONCLUSION

The initial encounter between Officer Marshall and Page, including the initial questioning and request for identification, was not the type of contact that implicated Page's Fourth Amendment rights. However, once there was no longer a justification for contact between Page and the officer, it was not reasonable for the officer to seize Page's driver's license and go back to his patrol vehicle to run a record check. Despite that, the discovery of the outstanding warrant for Page's arrest constituted an intervening circumstance between the initial seizure and discovery of the challenged evidence, which dissipated any possible taint of illegal law enforcement conduct. The order of the district judge suppressing the evidence is reversed and this case remanded for further proceedings.

Chief Justice SCHROEDER and Justices KIDWELL, EISMANN and BURDICK concur.