## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 36210

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 624 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 2, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| LOREN R. JAMES, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order denying motion to suppress evidence, affirmed.

Stephen D. Thompson, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

PERRY, Judge Pro Tem

Loren R. James appeals from his judgment of conviction entered upon his plea of guilty to felony driving under the influence. I.C. §§ 18-8004, 18-8005. Specifically, James challenges the district court's denial of his motion to suppress. For the reasons stated below, we affirm.

### I.

### BACKGROUND

On March 30, 2007, at 1:30 in the morning, a police officer observed a truck in the parking lot of a gas station. The officer was aware that the truck had been there for some time because he had seen it in the parking lot about two and one-half hours earlier while driving by. The vehicle was running and James was sitting in the driver's seat slumped forward. The officer parked behind the truck without turning on his overhead lights, approached the driver's door on foot, knocked on the window, and asked James to roll down the window. After James's failed attempts to roll down the window, the officer opened the driver's side door and James stepped out of the truck. The officer noticed that James smelled of alcohol, his eyes were red and

1

bloodshot, and his speech was slurred. The officer started performing field sobriety tests, but James did not finish the tests and refused a breath test.

The state charged James with felony driving under the influence.[1] James filed a motion to suppress evidence claiming that the officer's actions amounted to an unlawful seizure. After an evidentiary hearing, the district court denied the motion to suppress. James entered a conditional plea of guilty preserving his right to appeal the denial of his motion to suppress. James now appeals the denial of his motion to suppress.

## II.

## ANALYSIS

James asserts that the district court erred when it denied his motion to suppress because the officer's actions amounted to an illegal seizure. The state counters that James has failed to demonstrate that the district court erred because the application of the law to the facts shows no improper search or seizure.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of the witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

When a defendant seeks to suppress evidence that is alleged to have been obtained as a result of an unlawful seizure, the defendant bears the burden of proving that a seizure occurred. *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004). An encounter between a law enforcement officer and a citizen does not trigger Fourth Amendment scrutiny unless it is nonconsensual. *State v. Baker*, 141 Idaho 163, 165, 107 P.3d 1214, 1216 (2004). "A seizure under the meaning of the Fourth Amendment occurs only 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *State v.*

---

[1] James had more than two prior convictions for driving under the influence in the previous ten years.

*Nickel*, 134 Idaho 610, 612, 7 P.3d 219, 221 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968)). A seizure initiated through a show of authority requires words, actions, or both by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement. *State v. Maland*, 140 Idaho 817, 820, 103 P.3d 430, 433 (2004). The relevant inquiry in determining if a seizure occurred is whether, under all the circumstances surrounding the encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999); *State v. Fuentes*, 129 Idaho 830, 832, 933 P.2d 119, 121 (Ct. App. 1997). If a reasonable person would feel free to disregard the officer, then the encounter is consensual. *Page*, 140 Idaho at 843-44, 103 P.3d at 456-57. There is no seizure unless the individual actually submits to the officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 626-29 (1991); *State v. Agundis*, 127 Idaho 587, 590-91, 903 P.2d 752, 755-56 (Ct. App. 1995).

Instructive on the question of whether the officer's actions amounted to a seizure in this instance are *In re Clayton*, 113 Idaho 817, 748 P.2d 401 (1988), and *State v. Pick*, 124 Idaho 601, 861 P.2d 1266 (Ct. App. 1993).[2] In *Clayton*, a police officer approached Clayton's parked car in the early morning hours because the motor was running, the headlights were on, and Clayton was sitting in the driver's seat behind the steering wheel with his head slumped forward. The officer not only opened the driver's side door, but also reached in, turned the engine off, and took possession of the keys before even attempting to arouse Clayton. In holding that Clayton was not seized, the Supreme Court found that not only did the officer act reasonably in investigating the situation, but "when he observed the vehicle with its motor running, lights on, and the driver slumped forward, he had a duty as a police officer to investigate . . . ." *Id*. at 818, 748 P.2d at 402. The Court further concluded: "Tested upon practical consideration of everyday

[2] James relies on *State v. Schmidt*, 137 Idaho 301, 47 P.3d 1271 (Ct. App. 2002) as being instructive here. However, *Schmidt* is factually distinguishable from the instant case and we do not rely on it. There, the court determined that an officer's actions were not within his caretaking function when he investigated a vehicle that was parked in a pullout off of the highway. Although the car was parked facing traffic, the officer had not received any reports of an accident, and the officer did not observe anything about the vehicle's occupants that made him believe they were in need of assistance. Furthermore, the time of day was 6:49 p.m., and the occupant was awake and was able to roll down the window when the officer approached. *Id.* at 302-04, 47 P.3d at 1272-74.

life on which reasonable persons act, this situation falls outside the boundaries of normal conduct. The driver could have been hurt or sick, and in need of medical attention. [The officer] acted prudently and satisfied his caretaking function when investigating the vehicle." *Id.*

In *Pick*, an officer observed Pick's vehicle weaving in its lane and suspected she may be under the influence. The officer followed Pick's vehicle to a parking lot where she stopped and pulled over to talk to a friend. The officer called for assistance. When the assist officer arrived, he pulled up behind her, turned on his rear amber flashing lights, and approached and asked Pick if she was having trouble. At that time, the officer noticed that Pick had been drinking and conducted field sobriety tests, which Pick failed. Pick's motion to suppress the results based on unlawful seizure was denied. On appeal, this Court concluded that Pick was not seized, stating: ". . . Pick was under no obligation to answer [the officer's] questions. The officer showed no sign of authority or force restricting Pick's freedom of movement other than his uniform and the fact that he wanted to talk with her." *Pick*, 124 Idaho at 604, 861 P.2d at 1269.

Here, the district court found that the officer first observed James's truck parked in a gas station parking lot at around 11:00 p.m. When the officer came back at about 1:30 a.m., the truck was still there. The officer pulled in and parked his patrol car approximately twenty to twenty-five feet behind the truck without activating his overhead lights. The district court found that the officer observed or heard the engine running and saw that James was in the driver's seat and slumped forward and slightly to the right with the window up. The officer approached the driver's side door to check if James was breathing. He knocked on the window to get James's attention, and had to knock several times before it aroused James. After several knocks on the window, James woke up, sat upright, and eventually stared straight ahead before he turned his head and looked at the officer. The officer asked James to roll down his window. The district court found that James moved his left hand and it hit the window or door as if he was reaching for the crank of the window to roll it down but was unable to grasp it. The district court stated that officer described James's actions as the appearance of being disoriented. The officer opened the driver's side door of the truck and James turned to his left and stepped out of the truck. It was at this point that the officer noticed the odor of alcohol and additional indicators of intoxication.

The district court determined that the officer's actions did not amount to a stop or detention. The district court denied James's motion to suppress stating that the opening of the

4

driver's door was "a necessary and prudent act of that officer's duties to protect the public. And that it was a reasonable act of a community caretaking function that did not violate James's Fourth Amendment rights." We will not disturb the district court's findings of fact which are supported by substantial evidence. We agree with the district court that the officer's actions did not amount to a seizure. When the officer pulled into the parking lot, he parked well behind James's truck and did not activate his overhead lights. James was already parked when the officer arrived and he was under no obligation to comply with the officer's request to roll down the window. He was never given any order or direction to exit the vehicle; he did so on his own accord. The actions of the officer did not amount to a seizure as the officer made no show of force or authority over James that restricted his freedom of movement.

Finally, even if the officer's actions did amount to a seizure, his actions were justified under the community caretaking function. The officer was concerned for James's welfare and safety given his current state, and was merely checking on him to make sure he was alright. The officer testified that someone slumped over in their seat, like James was, was not normal conduct. The officer had a duty to investigate whether James was sick or hurt or in need of medical attention. The officer's actions were reasonable and prudent under the totality of the circumstances and were therefore within his caretaking function.

### III.
### CONCLUSION

James has failed to demonstrate that the actions of the officer amounted to a seizure and were not part of his community caretaking duties. The district court did not err when it denied James's motion to suppress. Accordingly, we affirm.

Judge GRATTON and Judge MELANSON **CONCUR.**