# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48899

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | Boise, December 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: February 3, 2022 |
| | ) | |
| GREGORY WADE TOWNER, SR., | ) | Melanie Gagnepain, Clerk |
| | ) | |
|     Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The decision of the district court is <u>reversed</u> and Towner's judgment of conviction is <u>vacated</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for Appellant. Kimberly Coster argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Kenneth Jorgensen argued.

---

BEVAN, Chief Justice.

This case comes to the Court on a petition for review from the Idaho Court of Appeals. Gregory Wade Towner, Sr., appeals from his conviction for possession of methamphetamine. The arresting officer found the contraband on Towner's person during a warrantless search. Towner moved to suppress, arguing that the officer's conduct violated his constitutional rights against unreasonable search and seizure. The district court denied Towner's motion after concluding that the officer's seizure and subsequent search were a reasonable exercise of the officer's community caretaking function. Towner appealed and the Idaho Court of Appeals affirmed. This Court granted Towner's petition for review. For the reasons below, we reverse the district court's denial of Towner's motion to suppress and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

On August 9, 2018, Officer Johns was on patrol when he received a call that someone was on the side of the road who appeared to be hallucinating. Officer Johns pulled into a nearby gas station and monitored a male for about thirty seconds to a minute. He recognized the man as Towner from previous interactions. Officer Johns testified that he observed Towner standing on the side of the road, yelling and screaming at the sky, and making very aggressive actions towards the air like he was arguing with somebody, but nobody else was there.

Officer Johns exited his patrol car and contacted Towner. Towner was dressed in a short sleeve t-shirt and long pants, wearing a hat, and sipping on a soda as he talked to Officer Johns. Towner told Officer Johns that he had been off his medication for a while, and suggested "maybe I could go to the hospital . . ." Officer Johns asked if Towner wanted to go to the hospital and he responded "sure." Towner said he was feeling "kind of out of it" but that he wasn't thinking about hurting himself or somebody else. Towner admitted he was depressed but stated that he had never attempted suicide and had never thought about hurting himself. Towner then claimed there were invisible wires covering him that were going to "send [him] to hell."

As Officer Johns and Towner began walking toward the patrol car, Towner suggested "I don't know, maybe I'm good," and stated that he needed to get his truck. Towner asked to call a friend to see if he could get his truck. Towner stated he needed a ride to the shop and then called someone on his cellphone. Towner asked Officer Johns if he could give him a ride to his truck, which he stated was located on Government Way by Pawn 1. Officer Johns answered "probably" and Towner ended the phone call.

Officer Johns confirmed Towner was not using any drugs or alcohol at the time and then asked Towner where he was staying. Towner stated that he had been evicted from where he was staying at First Street so he planned to go to a motel, however, they were all full. During the encounter, Towner continued to move his hands in the air and reference the invisible wires around him. Moments later, Officer Johns told Towner that he had to put him in handcuffs before he could go in the back of the patrol car. Officer Johns placed Towner in handcuffs and stated:

> So here's the deal Greg, I've got a lot of concerns for you being out here, with you thinking that these wires are out here, there's no wires out here, man. And you're thinking that they're trying to send you to hell. And you agree that you need to be on your meds right? So I'm taking you to the hospital to go talk to somebody first. I don't wanna just send you over to a friend's house. We've been dealing with you a whole bunch and when we talked to the people at First Street they were really worried about you. . . .

2

Officer Johns conducted a pat search of Towner and he felt "a plastic object in [the small coin area of Towner's pant pocket] that had – that felt fairly hard, and at the time [he] believed it was a replacement razor blade head with the plastic cover still on it." Officer Johns removed the item and realized it was a plastic bag that was tightly rolled up with a white crystalline powder substance that, through his training and experience, Officer Johns identified to be methamphetamine. Officer Johns put Towner in the back of the patrol car and drove him to the Kootenai County jail, not a hospital.

On August 10, 2018, the State filed a criminal complaint charging Towner with possession of a controlled substance. Towner moved to suppress, arguing that Officer Johns' conduct violated his constitutional rights against unreasonable search and seizure. The State filed a memorandum in opposition, alleging that the search was justified under the community caretaking function, specifically Idaho Code section 39-307A(b) [Protective custody under the Alcoholism and Intoxication Treatment Act].

At a hearing on Towner's motion to suppress, Officer Johns testified that he was trained that he could take a person into protective custody "[i]f somebody is a threat to themselves or the general public or gravely disabled." Officer Johns testified that he believed Towner was a threat to himself because:

> [T]owner was having these conversations with people that were not there, [Officer Johns'] prior knowledge of knowing that Mr. Towner does have mental health issues, as well as the potential that he [was] using illegal narcotics, combined together, [Towner's] continued freedom [Officer Johns] felt was in jeopardy to himself being that he didn't have a house to go to.
>
> At that time it was August so it was very hot out. [Towner] wasn't sure where his vehicle was even kept at, so he had nowhere to go for safety at the time. The invisible wires that he thought were going to try to kill him and cause harm to him that obviously weren't there; speaking to him, he even said that he needed to go to the hospital and needed to get back on his medications, so all of that taken together, [Officer Johns] believed that [Towner] was a threat to himself if he continued to have free reign, and so that's when [Officer Johns] placed [Towner] in protective custody.

Officer Johns also testified that he believed Towner was a threat to the general public because as he approached, Towner went to step out into the street without looking to see whether vehicles were coming. Officer Johns explained that once Towner was detained, he conducted a search to make sure he didn't have any weapons or items that could harm himself, Officer Johns,

3

or the hospital staff. Officer Johns testified that it was normal practice to search someone whenever they are taken into custody.

The State argued that under Idaho Code section 39-307A, which allows officers to take an individual incapacitated by drugs or alcohol into protective custody, Officer Johns acted reasonably by searching Towner to ensure he had no hazardous items on his person before placing him in the patrol car. Towner countered that Officer Johns' conduct was not justified under Idaho Code sections 66-329 or 66-317. Towner asserted that pursuant to these statutes, Officer Johns had to find that he was a danger to himself or others, or was gravely disabled before he could take him into protective custody. Towner argued that there was no substantial evidence to support such a finding. Thus, Towner asserted there was no justification for Officer Johns' seizure or subsequent search.

Ruling from the bench, the district court denied Towner's motion to suppress. First, relying on Officer Johns' testimony that his initial concerns were that Towner was hallucinating because of mental health issues, the district court found that Idaho Code section 39-307A did not apply. That said, the district court found that the community caretaking function did apply. The court stated that it was required to look to the totality of the circumstances, and whether the intrusive action of the police was reasonable in view of all the circumstances. The court found that up until the time Towner was searched, the intrusion was minimal:

> The discussion was very cordial.
>
> There is no doubt after viewing the video that Mr. Towner is hallucinating. He is calm. He is coherent, but as Mr. - - Officer Johns, rather testified, is not speaking or responding in relevant fashion, and that's certainly the case, so he's having difficulty, and Mr. Towner even said that he - - that it would be a good idea to go to the hospital to get back on his meds, admitted on more than one occasion that he hadn't been on his meds, so I don't believe that I need to get into the analysis of 66-329 and 66-317 to decide whether the community care-taking function exception exists in this case.
>
> I think, based on the totality of the circumstances, it was reasonable for Officer Johns to believe Mr. Towner needed some assistance, needed to get to the hospital, and needed the help that is provided at a hospital, and so the community care-taking function exists in this case.

As for the reasonableness of the search of Towner's pockets, the district court provided two alternative rationales. First, the court found Officer Johns had a right to conduct a weapons pat search before placing him in the patrol car. Second, the court cited the unpublished Court of

4

Appeals decision *State v. Burns*, No. 43114, 2016 WL 4938244 (Idaho Ct. App. Sept. 12, 2016), and reasoned that the search was not limited to a weapons search for officer safety, speculating there could be "other reasons" to conduct a search to get to the bottom of why Towner was hallucinating.

On November 9, 2018, the district court entered an order denying Towner's motion to suppress. The case proceeded to trial, where the district court admitted the evidence found in Towner's coin pocket. On November 19, 2018, the jury found Towner guilty of possession of a controlled substance.

Towner filed a timely notice of appeal. The case was originally assigned to the Court of Appeals. *State v. Towner*, Docket No. 47396, 2021 WL 915426 (Ct. App. Mar. 10, 2021). The Court of Appeals affirmed the district court's denial of Towner's motion to suppress after concluding that under the totality of the circumstances, Officer Johns' seizure and subsequent search were a reasonable exercise of Officer Johns' community caretaking function. *Id.* at *4. Towner petitioned for review, which this Court granted.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Smith*, 168 Idaho 463, 483 P.3d 1006, 1014 (2021) (quoting *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019)).

> When this Court reviews a district court's order granting or denying a motion to suppress, the standard of review is bifurcated. This Court will accept the trial court's findings of fact unless they are clearly erroneous. Even so, this Court may freely review the trial court's application of constitutional principles in light of the facts found.

*Id.* (citations and quotations omitted).

## III. ANALYSIS

### A. Towner properly preserved his argument for appeal.

On appeal, Towner argues that the district court erred by ignoring Idaho Code section 66-326(1). Section 66-326 defines the circumstances under which a peace officer has a right to take an individual into custody for mental health reasons without a hearing. The State suggests that the district court did not "ignore" section 66-326(1) because Towner never cited it below, thus, its applicability was not preserved for appeal.

5

In general, "substantive issues may not be raised for the first time on appeal." *State v. Neimeyer*, 169 Idaho 9, 490 P.3d 9, 13 (2021) (quoting *State v. Gonzalez*, 165 Idaho 95, 98, 439 P.3d 1267, 1270 (2019)). But so long as the substantive issue is properly preserved, a party's appellate argument may evolve on appeal. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019) (internal citation omitted). Specifically, this Court has allowed a party to supplement the argument that it made in the lower court with citation to relevant statutes dealing with the same subject on appeal. *Id*. (citing *Ada Cnty. Highway Dist. v. Brooke View, Inc*., 162 Idaho 138, 142, n.2, 395 P.3d 357, 361, n.2 (2017)).

Towner argues that, despite his incorrect citation reference below—citing Idaho Code sections 66-329 and 66-317 instead of Idaho Code section 66-326—it is clear that he argued the following before the district court: (1) Officer Johns' authority to take persons into protective custody for transport and mental health evaluation and commitment was "pursuant to statute"; (2) the statute was the Idaho Hospitalization of the Mentally Ill Act; (3) under that statute an officer needs to find that the person is "a danger to self, danger to others," or "gravely disabled"; (4) there was not sufficient evidence to establish that Mr. Towner met either of those threshold conditions; and for that reason (5) the officer "was not allowed to take Mr. Towner into custody." Thus, Towner submits that the district court had the "opportunity to address" his position, *Gonzalez*, 165 Idaho at 98, 439 P.3d at 1270, but explicitly ruled it did not need to do so in order to decide whether the community caretaking function applied.

It is evident from the record that Towner argued the merits of section 66-326(1)'s limits, even if he erroneously cited section 66-329 in support of his motion to suppress. Idaho Code section 66-329 explains the judicial procedure for having someone involuntarily committed to the Department of Health and Welfare for mental health treatment. Idaho Code section 66-326(1) governs an officer's license to take a person into protective custody without a hearing if the officer has reason to believe the person is gravely disabled due to mental illness or if the person's continued liberty poses an imminent danger to that person or others.

Both Towner and the State cited the relevant language of section 66-326(1) before the district court and elicited testimony from Officer Johns that matched the language of section 66-326(1). Officer Johns testified he took Towner into custody "pursuant to statute" which required a finding that a person poses a "potential threat to themselves . . . a potential threat to others" or is "gravely disabled." Officer Johns further agreed that the confines of "that statute" might delineate

6

whether he could bring someone into protective custody. The statute that permits an officer to take someone into custody without a hearing if they are gravely disabled or a threat to themselves or others is Idaho Code section 66-326(1). Thus, Towner's argument is preserved for appeal because he cited both the relevant language of the statute and the principles behind it in his argument before the district court.

**B.** **The district court erred in concluding Officer Johns' act of taking Towner into protective custody was within the officer's authority under the community caretaker exception to the Fourth Amendment without considering the requirements of Idaho Code section 66-326(1).**

Towner argues the district court erred in declining to consider the protective custody statute—Idaho Code section 66-326(1)—when evaluating the reasonableness of Officer Johns' actions. Towner continues that, under the statute, the State failed to meet its burden of showing Officer Johns had reason to believe that Towner was gravely disabled due to mental illness or that his continued liberty posed an imminent threat to himself or others. In response, the State focuses on the totality of the circumstances, and maintains that Officer Johns' actions were reasonable under his community caretaking function.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend IV. A warrantless search is presumptively unreasonable unless it falls within an exception to the warrant requirement. Once a defendant has established that a warrantless search occurred, the State bears the burden of establishing that a valid exception applies. *State v. Smith*, 168 Idaho 463, 472, 483 P.3d 1006, 1015 (2021).

An officer acting pursuant to his or her "community caretaking function," has been recognized as an exception to the Fourth Amendment's warrant requirement. *State v. Page*, 140 Idaho 841, 844, 103 P.3d 454, 457 (2004). "The community caretaker function arises from the duty of police officers to help citizens in need of assistance." *Id*. (citing *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997)). In analyzing community caretaking function cases, Idaho courts have adopted a totality of the circumstances test. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002 (citing *Matter of Clayton*, 113 Idaho 817, 818–19, 748 P.2d 401, 402–03 (1988)). "[T]he constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances." *Id*. (quoting *State v. Waldie*, 126 Idaho 864, 867, 893 P.2d 811, 814 (Ct. App. 1995)).

7

"There must be a sufficient public interest furthered by the detention to outweigh the degree and nature of the intrusion upon the privacy of the detained citizen." *Page*, 140 Idaho at 844, 103 P.3d at 457 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 880–81 (1975)). "There must also be some genuine and warranted concern by the officer to justify the detention of a citizen and not simply the officer's curiosity or an unsubstantiated suspicion of criminal activity." *Id*. (citing *Wixom*, 130 Idaho at 754, 947 P.2d at 1002 (community caretaking did not justify the stop of a motorist passing by an accident scene long after the accident so the officer could find out whether the occupants had any information about the accident); *State v. Schmidt*, 137 Idaho 301, 47 P.3d 1271 (2002) (community caretaking was not a justification for the detention of individuals sitting in a car lawfully parked on an unimproved pullout after dark in the winter on the officers' subjective belief, unsupported by any evidence, that the vehicle might have run off the road). Whenever a person is detained, the scope of the detention must be carefully tailored to its underlying justification. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Ct. App. 2006).

Towner concedes that his initial seizure by Officer Johns, by the officer's calling out and having him walk back to talk, was arguably within his community caretaking function. Officer Johns' testimony bears this out. Officer Johns testified that: (1) he received a report of a person standing by the roadside who "appeared to be hallucinating"; (2) he recognized Towner from previous experiences and was familiar with Towner "having mental health issues"; and (3) Officer Johns received a report of an apparent welfare concern from the group home where Towner had been living. That said, Towner argues that Officer Johns' genuine concerns for his well-being did not justify the next act of taking him into protective custody. Towner submits that an officer's authority to take a person "into custody" for "evaluation, care or treatment of mental illness," is strictly limited by Idaho Code section 66-326. The statute provides, in relevant part:

> DETENTION WITHOUT HEARING. (1) No person shall be taken into custody or detained as an alleged emergency patient for observation, diagnosis, evaluation, care or treatment of mental illness unless and until the court has ordered such apprehension and custody under the provisions outlined in section 66-329, Idaho Code; provided, however, that *a person may be taken into custody by a peace officer and placed in a facility*, or the person may be detained at a hospital at which the person presented or was brought to receive medical or mental health care, if the peace officer or a physician medical staff member of such hospital or a physician's assistant or advanced practice registered nurse practicing in such hospital *has reason to believe that the person is gravely disabled due to mental illness or the person's continued liberty poses an imminent danger to that person or others, as evidenced by a threat of substantial physical harm . . . .*

8

I.C. § 66-326(1) (emphasis added).

Without discussing whether Officer Johns complied with section 66-326(1), the district court stated: "I don't believe that I need to get into the analysis of 66-329 [Commitment to Department Director Upon Court Order – Judicial Procedure] and 66-317 [Definitions applying to Hospitalization of Mentally Ill] to decide whether the community caretaking function exception exists in this case." The court found that "based on the totality of the circumstances, it was reasonable for Officer Johns to believe Mr. Towner needed some assistance, needed to get to the hospital, and needed help that is provided at a hospital, and so the community care-taking function exists in this case."

We agree that Officer Johns' initial approach and conversation with Towner was permissible under his community caretaking function. The body camera footage and Officer Johns' testimony at the motion to suppress hearing show that he was concerned for Towner's well-being and went to see if he needed any assistance. *Page*, 140 Idaho at 844, 103 P.3d at 457; *Wixom*, 130 Idaho at 754, 947 P.2d at 1002 ("The community caretaking function involves the duty of police officers to help citizens in need of assistance"). But before Officer Johns decided to place Towner in handcuffs and take him into protective custody, the requirements of Idaho Code section 66-326 had to be satisfied. Section 66-326 provides a peace officer may only take someone into custody if the officer "has reason to believe that the person is gravely disabled due to mental illness or the person's continued liberty poses an imminent danger to that person or others, as evidenced by a threat of substantial physical harm." I.C. § 66-326(1). Thus, the community caretaking function could initially justify Officer Johns' brief detention of Towner to inquire about his mental health and to find out whether he needed additional assistance. But Officer Johns was then required to comply with section 66-326(1) to lawfully take Towner into protective custody. The district court erred in not addressing the applicable statutory requirements and whether they were met here.

Accordingly, we reverse the district court's denial of Towner's motion to suppress and remand the case with instructions for the district court to enter findings of fact related to whether the State proved that Towner was "gravely disabled" or an "imminent danger" to himself or others because of his mental illness. Having reversed the district court's denial of Towner's motion to

suppress on this basis, we do not reach Towner's alternative argument that the later search was not justified within the scope of the community caretaking function.[1]

## IV. CONCLUSION

We reverse the district court's denial of Towner's motion to suppress. We remand the case with instructions for the district court to enter findings of fact related to whether the State proved that Towner was "gravely disabled" or an "imminent danger" to himself or others because of his mental illness under Idaho Code section 66-326(1), before he was taken into protective custody.

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR.

---

[1] Towner asserted in his petition for review to this Court that the United States Supreme Court's recent decision in *Caniglia v. Strom*, ___ U.S. ___, 141 S. Ct. 1596 (2021), mandated review and reversal by this Court. Given our conclusion that the district court erred by failing to apply the statutory factors of Idaho Code section 66-326(1), there is no reason to address the community caretaking function in more detail here. We leave the scope of the community caretaking function post-*Caniglia* for another day.