IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 50217

| | |
|---|---|
| STATE OF IDAHO,<br><br>Plaintiff-Respondent,<br><br>v.<br><br>TALON SCOTT WICKER-HINTZMAN,<br><br>Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed: February 14, 2024

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Order denying motion to suppress, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

GRATTON, Chief Judge

Talon Scott Wicker-Hintzman appeals from his judgment of conviction for two counts of felony possession of a controlled substance, Idaho Code § 37-2732(c); one count of misdemeanor possession of a controlled substance, I.C. § 37-2732(c); possession of drug paraphernalia, I.C. § 37-2734A; and resisting and/or obstructing an officer, I.C. § 18-705. Wicker-Hintzman argues the district court erred in denying his motion to suppress. Specifically, Wicker-Hintzman argues that he was unlawfully detained in violation of his Fourth Amendment rights. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2022, Corporal Lister arrived at an apartment complex parking lot after an individual called to report a suspicious vehicle that had been parked in a handicapped parking

1

space overnight. When Corporal Lister first arrived, he noticed the vehicle's trunk was open, the back window was broken out and covered with a piece of plastic, the vehicle was bearing a handicapped placard, and an individual (later identified as Wicker-Hintzman) was slumped over in the driver's seat. He also observed that the vehicle was packed full of clothing, bags, and other items. Corporal Lister had dispatch run the vehicle's license plate and discovered that the vehicle was registered to someone named Megan Leslie, the registration had been expired since 2019, and the vehicle had not been reported as stolen.

A second officer, Officer Young, arrived and stood at the passenger side of Wicker-Hintzman's vehicle while Corporal Lister walked over to the driver's side and knocked on the window. Neither officer parked their patrol vehicle in a manner that blocked Wicker-Hintzman from leaving, nor did either officer have their patrol lights on. A sleeping Wicker-Hintzman awoke as Corporal Lister asked him to either roll down his window or open up the door so they could speak. Wicker-Hintzman opened his door. Corporal Lister opened the door a bit more, and Officer Young stepped near the open door.

The driver identified himself as Wicker-Hintzman and provided his date of birth. Wicker-Hintzman was unable to explain why he was parked at the apartment complex. After being asked about the owner of the vehicle, Wicker-Hintzman stated he did not recognize the name of the female listed on the registration, and he told the officers the vehicle was owned by his father. During the conversation, Wicker-Hintzman kept moving his hands and Corporal Lister requested multiple times that Wicker-Hintzman put his hands on the wheel.

Corporal Lister then received information back from dispatch that Wicker-Hintzman had a warrant. At this point, Wicker-Hintzman shut his vehicle door and attempted to leave. Officer Young ran over to the passenger side of the vehicle, opened the door, and attempted to pull Wicker-Hintzman away from the ignition. Corporal Lister was eventually able to unlock the front driver's side door, and the officers removed Wicker-Hintzman from the vehicle and arrested him on the warrant. Corporal Lister subsequently searched Wicker-Hintzman and located two pocketknives and drug paraphernalia in his pockets. A search of Wicker-Hintzman's vehicle revealed marijuana, twenty pills that were later determined to be fentanyl, a plastic baggie containing a crystal-like substance that tested positive for methamphetamine, and drug paraphernalia.

Wicker-Hintzman filed a motion to suppress, arguing the officers did not have reasonable suspicion to detain him. The district court denied the motion to suppress. Reserving the right to

appeal the ruling on the suppression motion, Wicker-Hintzman entered a conditional guilty plea to two counts of felony possession of a controlled substance, one count of misdemeanor possession of a controlled substance, possession of drug paraphernalia, and resisting and/or obstructing an officer. Wicker-Hintzman appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Determinations of reasonable suspicion are reviewed de novo. *State v. Bonner*, 167 Idaho 88, 93, 467 P.3d 452, 457 (2020).

## III.

## ANALYSIS

Wicker-Hintzman claims the district court erred in denying his motion to suppress. Wicker-Hintzman contends that he was seized without reasonable suspicion, in violation of the Fourth Amendment, when Corporal Lister opened the door a bit further and Officer Young stood near the open door during the interaction. Alternatively, Wicker-Hintzman argues that he was seized without reasonable suspicion when he was told to keep his hands on the steering wheel. The State argues that Wicker-Hintzman was not seized until the officers learned of the warrant and Wicker-Hintzman attempted to leave. Additionally, to the extent Wicker-Hintzman was seized, the officers had reasonable suspicion justifying such seizure.

The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. CONST. amend IV. The United States Supreme Court has held that even a brief stop may be considered a seizure for Fourth Amendment purposes. *State v. Godwin*, 121 Idaho 491, 493, 826 P.2d 452, 454 (1992). The Idaho Supreme Court has held that a seizure under the meaning of the Fourth Amendment occurs only when the officer, by means of physical force or

3

show of authority, has in some way restrained the liberty of a citizen. *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004). No seizure has occurred when an officer simply approaches an individual on the street or other public place, by asking him if he is willing to answer some questions, or by putting questions to him if he is willing to listen. *Id.* at 844, 103 P.3d at 457. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).

When a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the burden of proving that a seizure occurred is on the defendant. *Id.* Therefore, the proper inquiry in determining whether a seizure occurred is whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *Id.* This rule has been otherwise stated as, so long as a reasonable person would feel free to disregard the police and go about his business, an encounter between police and an individual is consensual. *Page*, at 843-44, 103 P.3d at 456-57. An encounter between a law enforcement officer and a citizen does not trigger Fourth Amendment scrutiny unless it is nonconsensual. *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009).

The district court determined that the initial interaction between the officers and Wicker-Hintzman "started out as a consensual encounter." As the district court found, it was appropriate for the officers to approach the vehicle to make sure its occupant was safe and to determine whether he had a legitimate reason to be in the parking lot. The district court further found that the consensual encounter continued through the point where Wicker-Hintzman opened the door, Corporal Lister pulled the door open further,[1] and Officer Young stood near the door. Wicker-Hintzman argues he was seized because he would have been at risk of slamming Corporal Lister's fingers in the vehicle's door and of hitting Officer Young if he were to close the door and back out of the parking space to leave the encounter.[2] Wicker-Hintzman contends that Officer Young stood

---

[1]  The district court disagreed with counsel's argument as to how fully the door was then open, suggesting a belief that the door was not fully opened.

[2]  In *State v. Willoughby*, 147 Idaho 482, 488, 211 P.3d 91, 97 (2009), the Idaho Supreme Court determined that law enforcement officers positioning themselves or their vehicles to prevent a person from leaving is indicative of a seizure.

4

in the space between the open door and Mr. Wicker-Hintzman's vehicle.  Conversely, the district court stated that "the position of the assist officer is definitely close to the driver's side door that has been, to an extent, opened."  This finding does not suggest that Officer Young was between the open door and the vehicle.  Moreover, the video of the encounter shows that Officer Young was not blocking the door or Wicker-Hintzman's ability to shut the door.  In fact, when Wicker-Hintzman attempted to leave, he was able to shut the door without harm to either officer.  Contrary to Wicker-Hintzman's argument, no seizure occurred at this point in the encounter.

Wicker-Hintzman alternatively argues that the officers' requests that he keep his hands on the steering wheel constituted a seizure.  The district court disagreed.  The district court found that officers, even in a consensual encounter, have the right to direct an individual not to do something, like moving their hands around, for the safety of the officers and the public.  It is unreasonable to require that police officers take unnecessary risks in the performance of their duties.  *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977).  One risk to an officer's safety exists whenever he or she approaches a person seated in an automobile.  *Id.*  In *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct. App. 1992), an officer directed the defendant to turn off the vehicle during a consensual encounter.  This Court found that asking the defendant to turn off the motor enhanced the officer's safety while minimally intruding on the defendant's freedom of movement.  *Id*. at 828, 839 P.2d at 1242.  The same is true here; the officers were entitled to instruct Wicker-Hintzman to keep his hands on the steering wheel for safety, and to repeat the request when Wicker-Hintzman removed his hands from the steering wheel.  This safety precaution did not turn the consensual encounter into a seizure.

The district court correctly concluded the encounter was consensual at all times until discovery of the warrant, at which time the officers had reasonable suspicion to detain Wicker-Hintzman.[3]  The district court did not error in denying Wicker-Hintzman's motion to suppress.

---

[3]     Thus, we need not address the State's alternative argument that, to the extent Wicker-Hintzman was seized, the officers had reasonable suspicion justifying such seizure.

**IV.**

**CONCLUSION**

The district court did not err in denying Wicker-Hintzman's motion to suppress. Therefore, the order of the district court denying Wicker-Hintzman's motion to suppress and Wicker-Hintzman's judgment of conviction are affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.